**Ricardo Antonio WELCH, Jr.**

v.

**Janet RENO, et al.**

**Civil No. CCB–99–2801.**

United States District Court,
D. Maryland.

June 6, 2000.

Mary Ellen Fleck, Todd M. Stenerson, Akin, Gump, Strauss, Hauer & Feld, LLP, Washington, DC, for petitioner.

George W. Maugans, Special Asst. U.S. Atty., U.S. I.N.S., Baltimore, MD, for Respondents.

### MEMORANDUM

BLAKE, District Judge.

Now pending before this Court is the Petition of Ricardo Antonio Welch, Jr., for writ of *habeas corpus,* pursuant to 28 U.S.C. § 2241. Petitioner challenges his detention by the Immigration and Naturalization Service ("INS") at the Wicomico County Detention Center in Salisbury, Maryland. Petitioner maintains that his continued detention without bail hearing violates his Fifth Amendment Due Process rights. In addition, Petitioner challenges the failure of INS to apply the permanent rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009–3546 (1996), to his proceedings. For the reasons that follow, this Court will order the INS to provide Welch with a bail hearing before an Immigration Judge. The Court will defer its decision on Petitioner's challenge to the failure of INS to apply the permanent IIRIRA rules pending supplemental briefing by the parties on that issue.

### STANDARD OF REVIEW

In addressing an alien's habeas petition filed pursuant to 28 U.S.C. § 2241, district courts may consider both statutory

and constitutional questions when presented. *See Bowrin v. U.S. I.N.S.*, 194 F.3d 483, 490 (4th Cir.1999). But, "[o]nly questions of pure law will be considered on § 2241 habeas review. Review of factual or discretionary issues is prohibited." *Id.*

## BACKGROUND

The facts in this case are undisputed. Ricardo Antonio Welch, Jr. is a native and citizen of Panama. (Amended Verified Petition for Writ of Habeas Corpus ["Petition"], ¶ 4) On or about December 18, 1978, at the age of ten, he entered the United States and has been a permanent resident of this country since that time. (*Id.* at ¶ 9) He served in the Navy and Naval Reserves from 1986 through 1994, when he was honorably discharged. (*Id.* at ¶ 10) His parents, two of his three siblings, and his son are citizens of the United States. (*Id.* at ¶ 9)

On August 6, 1993, criminal charges were filed against Welch in the Circuit Court for Montgomery County, Maryland. (*Id.* at ¶ 12) On March 7, 1994, Welch pled guilty to the following offenses: (1) use of a handgun in the commission of a crime of violence/felony; (2) reckless endangerment; (3) attempted voluntary manslaughter; and (4) assault and battery. (Resps.Opp'n, p. 3) On July 22, 1994, Welch was sentenced to: (1) five years incarceration for the reckless endangerment and attempted voluntary manslaughter counts; and (2) one year and eleven days for the use of a handgun and assault and battery counts. (Petition, ¶ 14) These two sentences were to be served concurrently. (*Id.*) In October 1996, after serving three years and four months in a Maryland state correctional facility, Welch was released. (*Id.* at ¶ 15)

On October 11, 1994, the INS issued an Order to Show Cause charging that Welch was deportable for an aggravated felony (deportable under former section 241(a)(2)(A)(iii) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1251(a)(2)(A)(iii)) and a firearms offense (deportable under former section 241(a)(2)(C) of the INA, 8 U.S.C. § 1251(a)(2)(C)).[1] (Resps.Opp'n, pp. 3–4) On or about August 26, 1997, the Immigration Judge issued a Memorandum of Decision and Order to deport Welch. (Petition, ¶ 19) In that Order, the Judge stated that the deportation was based upon Welch's "concession to the allegations contained in the [amended Order to Show Cause] and . . . [his] records of conviction. . . ." (*Id.*) The Judge stated that, because Welch's conviction for attempted voluntary manslaughter met the statutory definition of a crime of violence, the Judge did not need to analyze the other crimes for which Welch had been convicted. (*Id.*)

Welch then appealed the Immigration Judge's opinion. (*Id.* at ¶ 21) On July 8, 1998, the Board of Immigration Appeals ("BIA") dismissed that appeal. (*Id.*) On or about October 16, 1998, Welch was taken into custody. (Resps.Opp'n, p. 5) A Motion to Reopen was denied on December 11, 1998, and a subsequent Motion to Reconsider was similarly denied on March 31, 1999. (Petition, ¶¶ 22 & 24) As a result, Welch has been in INS custody since October 16, 1998.[2] (*Id.* at ¶ 23; Resps. Opp'n, p. 5) Welch has not been deported, however, because INS has not yet received from the Consulate of Panama a travel document that is necessary to effect Welch's deportation to Panama. (Resps.Opp'n, pp. 5–6)

On April 22, 1999, Welch prevailed in the Circuit Court of Maryland for Montgomery County on a Petition for a Writ of *Audita Querela*. (Petition, ¶ 27) As a result, his plea to the 1994 felonies was stricken. (*Id.*) On that same date, the State of Maryland reduced the charges against Welch in exchange for a new plea. (*Id.*) As a result of this new plea, Welch

---

1. The Act was substantially amended by the IIRIRA.

2. State officials transported Welch to an April 22, 1999, state court proceeding.

stands convicted of six counts of misdemeanor simple assault and one count of misdemeanor illegal wearing or carrying of a handgun. (*Id.*) The 1994 convictions, relied on by INS in its Order to Show Cause, have been vacated. (*Id.* at ¶ 29)

Welch has remained in INS custody since October 16, 1998. (*Id.* at ¶ 23; Resps. Opp'n, p. 5) INS has not commenced any removal proceedings against Welch based on the 1999 convictions, and claims that it will not deport him under the presently outstanding order of deportation as that order was based on the vacated 1994 convictions. (Resps. Opp'n, p. 7 n. 7) But, INS moved to reopen Welch's case and, on October 28, 1999, the BIA granted that motion. (Resps.Supp.Opp'n, p. 2) On February 29, 2000 the Immigration Judge terminated the proceedings, without prejudice, for the sole purpose of permitting Welch to proceed with his application for naturalization. (*In the Matter of Welch Quarless,* # A35 727 220, p. 5 (Immigration Ct. Feb. 29, 2000) (attached to Pet'r March 9, 2000 fax to chambers)) Because INS has appealed this decision, it refuses to release Welch. (Pet'r March 9, 2000 fax to chambers)

On September 14, 1999, Welch filed with this Court a Petition for Habeas Corpus. Welch presents two separate and independent grounds for his petition. First, Welch contends that INS continues to detain him based on a vacated felony conviction and, therefore, no evidentiary foundation exists for Welch's deportation proceedings and order. Second, Welch argues that the indefinite detention by INS violates his Fifth Amendment liberty and procedural Due Process rights.

### ANALYSIS

#### I. The Applicable Law

Welch was convicted in 1994. Since that time, Congress has made numerous statutory changes to the INA. First, Congress passed the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–32, 110 Stat. 1214 (1996). Prior to April 24, 1996, the Attorney General had discretion to release an alien who was convicted of a felony but did not serve at least five years for that offense. *See* former section 212(c), 8 U.S.C. § 1182(c). Section 440(d) of the AEDPA eliminated this discretion for aliens convicted of certain criminal offenses, including the offense for which Welch was found deportable. *See* AEDPA § 440(d). The Attorney General held that section 440(d) of the AEDPA is applicable to all applications pending on the date of the AEDPA's enactment, but that an alien who had admitted the charge of deportability prior to the enactment of the AEDPA could move to reopen his proceedings to deny deportability. *See In re Soriano,* Int. Dec. 3289 (A.G. Feb. 21, 1997) (explained in *Bowrin v. INS,* 194 F.3d 483, 486–87 (4th Cir. 1999)); *see also* Resps. Opp'n, p. 5 n. 5. Pursuant to that decision, Welch had his proceedings reopened, but the BIA denied relief.

Several months after passage of the AEDPA, Congress passed the IIRIRA. The IIRIRA was passed on September 20, 1996, but had an effective date of April 1, 1997. *See* IIRIRA § 309(c); *Bowrin,* 194 F.3d at 487. Transitional rules were adopted for the interim period. *See Bowrin,* 194 F.3d at 487.

Finally, INA section 242(g), 8 U.S.C. § 1252(g) provides that:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). Section 306(c)(1) of the IIRIRA states that INA section 1252(g) shall apply without limitation to all past, pending, and future cases. The Fourth Circuit, however, has held that section 1252(g) does not apply to agency in-

terpretations of statutes. *Bowrin*, 194 F.3d at 488. Therefore, a District Court may review both statutory and constitutional questions under a habeas petition. *See id.* at 490. Review of factual or discretionary issues, however, is prohibited. *See id.*

## II. Exhaustion of Administrative Remedies

■■■■ According to the Defendants, the BIA, as the administrative agency charged with administering the INA, should have the primary responsibility for administering that statute. Under the immigration laws, exhaustion of remedies is statutorily required only for appeals to final orders of removal. *See* 8 U.S.C. § 1252(d)(1); *Galvez v. Lewis*, 56 F.Supp.2d 637, 644 (E.D.Va.1999); *Aguilar v. Lewis*, 50 F.Supp.2d 539, 541 (E.D.Va.1999). Here, Welch is not challenging the order of removal but, instead, challenges his continued detention. Therefore, the statute does not mandate administrative review. *See Phan v. Reno*, 56 F.Supp.2d 1149, 1153 (W.D.Wash.1999)

Defendants maintain, however, that "[n]otwithstanding the fact that exhaustion of administrative remedies is not statutorily required, it is well established that such a requirement may be imposed within the exercise of judicial discretion." Resps. Opp'n, p. 8. "[W]here Congress has not clearly required exhaustion, sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291 (1992). Some of the reasons for requiring exhaustion apply to Welch's statutory arguments. First, "agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer." *Id.* at 1086.

Moreover, "[e]xhaustion concerns apply with particular force when the action under review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise." *Id.* Here, Welch's statutory argument involves whether section 236(c), 8 U.S.C. § 1226(c), applies to his situation. Such a determination falls under the expertise of the BIA.

Finally, the exhaustion doctrine gives the administrative agency the opportunity to correct its own mistakes before being haled into court. *Id.* This promotes judicial efficiency in two ways: (1) it avoids piecemeal appeals, and (2) when the controversy survives administrative review, a record may be produced to help with subsequent judicial consideration. *Id.* at 1086–87. Here, the BIA has reopened its proceedings and can address Welch's statutory claims.

Despite these benefits of the exhaustion doctrine, the *McCarthy* Court recognized "three broad sets of circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion." *Id.* at 1087. Two of these circumstances are applicable to Welch's case. The first circumstance is when "requiring resort to the administrative remedy may occasion undue prejudice to subsequent assertion of a court action. Such prejudice may result, for example, from an unreasonable or indefinite timeframe for administrative action." *Id.* Here, while Defendants stated at oral argument that Welch's hearing would proceed along an expedited track, they were unable to provide any definitive time for the conclusion of those proceedings.

The other circumstance applicable to Welch's case is when "an administrative remedy may be inadequate because of some doubt as to whether the agency was empowered to grant effective relief." *Id.* at 1088. Here, the BIA could determine whether section 236(c) applies to Welch and, therefore, address his statutory claims. But, the BIA cannot address the constitutionality of the statute it is charged with enforcing and, therefore, could not reach Welch's constitutional arguments. *See Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977). Therefore, at least with respect to Welch's

constitutional challenges, requiring Welch to first exhaust his remedies would be futile. *See Phan*, 56 F.Supp.2d at 1153; *Grant v. Zemski*, 54 F.Supp.2d 437, 442 (E.D.Pa.1999); *Van Eeton v. Beebe*, 49 F.Supp.2d 1186, 1189 (D.Or.1999); *see also Bernal–Vallejo v. INS*, 195 F.3d 56, 64 (1st Cir.1999) (noting that administrative exhaustion is not required when the BIA has no power to address the constitutional challenge); *Singh v. Reno*, 182 F.3d 504, 511 (7th Cir.1999) (same). Accordingly, this Court will not require Welch to exhaust his remedies and will consider Welch's challenge to his detention.

III. Defendants' Rationale for Detaining Welch

A. The Applicability of Section 236(c) to Welch

■ In their opposition to Welch's petition, Defendants argued that "the INS may detain [Welch] under INA § 241, 8 U.S.C. § 1231, since there has been an administratively final order issued against Petitioner." Resps. Opp'n, pp. 12–13. Since that time, however, the BIA has reopened Welch's deportation proceedings. *See In the Matter of Welch–Quarless*, # A35 727 220, p. 1 (Immigration Ct. Feb 29, 2000) (attached to Pet'r March 9, 2000 fax to chambers). As a result, at present, there is no final agency decision. *See id.* at p. 5; Resps. Supp. Opp'n, p. 3. Accordingly, for Defendants to continue to detain Welch, they must rely upon section 236(c), 8 U.S.C. § 1226(c).

■ According to the Defendants, Welch's 1999 conviction for illegally wearing or carrying a handgun renders him subject to detention under section 236(c) as an alien convicted of a firearm offense. *See* 8 U.S.C. § 1227(a)(2)(C) (allowing deportation for any alien carrying a firearm in violation of any law). Section 236(c) requires the Attorney General to take into custody any alien who is deportable for having been convicted of a firearm offense. *See* 8 U.S.C. § 1226(c)(1)(B). Thus, De-

fendants maintain that they may continue to detain Welch based on his April 22, 1999, firearms conviction.

Welch, on the other hand, claims that section 236(c) does not apply to him. First, Welch relies on section 236(c)(1) which states that the Attorney General "shall take into custody any alien ..." who has committed one of the enumerated offenses. 8 U.S.C. § 1226(c)(1). According to Welch, when the April 22, 1999, conviction was rendered, he was already in INS custody. Thus, he was not "taken" into custody by INS. Instead, INS "maintained" custody over him. Welch claims that maintaining custody is not authorized under section 236(c). Such a reading, however, places undue emphasis on the use of the word "take" in section 236(c)(1) and ignores the broad mandate of section 236(c).

Second, Welch relies on the effective date of section 236(c). Section 236(c) only applies to individuals "released" after October 10, 1998. *See Galvez*, 56 F.Supp.2d at 640. Welch claims that, since he was released from criminal incarceration in 1996, section 236(c) is inapplicable. Thus, he argues that a bond hearing is required for his detention.

Welch's 1996 release from criminal incarceration may render section 236(c) inapplicable to his 1994 conviction. *See Aguilar*, 50 F.Supp.2d at 544; *Rivera v. Demore*, 1999 WL 521177, at *6 (N.D.Cal. July 13, 1999). But, Defendants maintain custody over Welch based on his 1999 conviction, not the 1994 conviction. As a result of Welch's 1999 conviction, he was sentenced to 364 days in prison. *See* Resps. Opp'n, Ex. A. Since this sentence was imposed in 1999, he was released from state custody after the effective date of section 236(c).

The fact that Welch was given credit for the time served on his 1994 conviction, and did not serve any additional time as a result of the 1999 sentence, does not make section 236(c) inapplicable. Section 236(c) states that the Attorney General shall take

custody of the alien "when the alien is released, without regard to whether the alien is released on parole, supervised release, on probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." 8 U.S.C. § 1226(c)(1). The wide range of circumstances listed after the "when released" language suggests that Congress intended section 236(c) to apply to an individual in Welch's position. Accordingly, this Court holds that section 236(c) applies to Welch.

### B. The Constitutionality of Section 236(c)

■ As discussed earlier, section 236(c) requires the Attorney General to take into custody aliens who have committed certain offenses, including firearms offenses, without granting the alien a bail review hearing. *See* 8 U.S.C. § 1226(c)(1)(B); 8 U.S.C. § 1227(a)(2)(C). The alien remains in custody until deportation proceedings are completed. *See* 8 U.S.C. § 1226(c). Once deportation proceedings become final, if the INS does not remove the alien within 90 days, he becomes eligible for release from custody. *See* 8 U.S.C. § 1231(a)(2). But, pending completion of those proceedings, the Attorney General may only release the alien for witness protection purposes not implicated in Welch's case. *See* 8 U.S.C. § 1226(c)(2).

The Fourth Circuit's recent decision in *Hawkins v. Freeman,* 195 F.3d 732 (4th Cir.1999) guides this court's analysis of Welch's substantive due process claim. In that decision, the Fourth Circuit made a distinction between challenges to executive decisions and challenges to legislative decisions. *Id.* at 738–39. "In executive act cases, the issue of fatal arbitrariness should be addressed as a 'threshold question,' asking whether the challenged conduct was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id.* at 738 (*quoting County of Sacramento v. Lewis,* 523 U.S.

833, 118 S.Ct. 1708, 1717 n. 8, 140 L.Ed.2d 1043 (1998)).

On the other hand, "[i]f the claimed violation is by legislative enactment (either facially or as applied), analysis proceeds by a ... two-step process that does not involve any threshold 'conscience-shocking' inquiry." *Hawkins,* 195 F.3d at 739. In the first step, the court must determine "whether the claimed violation involves one of 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" *Id.* (*quoting Washington v. Glucksberg,* 521 U.S. 702, 117 S.Ct. 2258, 2268, 138 L.Ed.2d 772 (1997)). The second step in reviewing a legislative enactment depends on the outcome of the first step. *See Hawkins,* 195 F.3d at 739. If the asserted interest is "fundamental," then the court must apply strict scrutiny to the legislative enactment. *Id.* On the other hand, if the interest is not fundamental, the court should only apply a rational-basis standard of review. *Id.*

Since section 236(c) was enacted by Congress, the standard for a legislative enactment applies. Therefore, this Court must first "make a 'careful description' of the asserted liberty right or interest that avoids overgeneralization in the historical inquiry." *Id.* at 747 (*quoting Glucksberg,* 117 S.Ct. at 2268). Here, Welch's interest is that of an individual, detained pending judicial proceedings, to receive a bail hearing in which a judge determines the individual's flight risk and threat to the community. The Supreme Court has held that such an interest is fundamental. *See United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 2102–03, 95 L.Ed.2d 697 (1987).

Defendants contend that, despite the fundamental interest involved, this Court should employ a highly deferential standard. Citing *Reno v. Flores,* 507 U.S. 292, 113 S.Ct. 1439, 1449, 123 L.Ed.2d 1 (1993), Defendants maintain that section 236(c) was passed pursuant to Congress' plenary

power over immigration and, therefore, this Court must apply a deferential rational basis test. This test applies "the (unexacting) standard of rationally advancing some legitimate governmental purpose...." *Id.*

This court joins those that have rejected the application of *Flores* to section 236(c). *See, e.g., Van Eeton,* 49 F.Supp.2d at 1189; *Danh v. Demore,* 59 F.Supp.2d 994, 1003 (N.D.Cal.1999); *Martinez v. Greene,* 28 F.Supp.2d 1275, 1281 (D.Colo.1998). First, the situation in *Flores* was substantially different from the situation facing aliens detained under section 236(c). *Flores* upheld the constitutionality of release procedures requiring that juvenile aliens, held in INS custody, be released only to a parent or lawful guardian. 113 S.Ct. at 1447. The Court emphasized, however, that "juveniles, unlike adults, are always in some form of custody, and where the custody of the parent or legal guardian fails, the government may (indeed, we have said must) either exercise custody itself or appoint someone else to do so." *Id.* In contrast, section 236(c) applies to adults such as Welch. *See Martinez,* 28 F.Supp.2d at 1281; *Van Eeton,* 49 F.Supp.2d at 1189.

Moreover, the *Flores* Court emphasized that the facilities where the juveniles were detained were more akin to "legal custody" then "detention." 113 S.Ct. at 1445. Therefore, the "freedom from physical restraint ... [at least] in the sense of shackles, chains, or barred cells" was not implicated. *Id.* at 1447. According to the Court, these facilities were

> not correctional institutions but facilities that meet state licensing requirements for the provision of shelter care, foster care, group care, and related services to dependent children [that include] an extensive list of services, including physical care and maintenance, individual and group counseling, education, recreation and leisure-time activities, family reunification services, and access to religious services, visitors, and legal assistance....

*Id.* at 1445. In comparison, Welch and others like him detained under section 236(c) are held in prison settings. *See Martinez,* 28 F.Supp.2d at 1281; *Van Eeton,* 49 F.Supp.2d at 1189; *Rogowski v. Reno,* 1999 WL 1702851, at *7 (D.Conn. Oct.28, 1999).

Finally, a distinction must be made between Congress' power over substantive immigration laws and its power to legislate rules implementing those laws. "Congress' broad authority over immigration has traditionally extended to decisions about what classes of aliens are admissible and deportable and under what circumstances." *Danh,* 59 F.Supp.2d at 999; *see also Phan,* 56 F.Supp.2d at 1155 ("While the plenary power doctrine supports judicial deference to the legislative and executive branches on substantive immigration matters, such deference does not extend to post-deportation order detention"). Aliens challenging section 236(c) do not challenge Congress' ability to detain or deport them based on their criminal history. *See Danh,* 59 F.Supp.2d at 999; *Chamblin v. INS,* 1999 WL 803970, at *7 (D.N.H. June 8, 1999). Rather, they challenge the implementation of that decision and Congress' ability to indefinitely detain them, without any possibility of release on bond, pending administrative proceedings. *Danh,* 59 F.Supp.2d at 999; *Chamblin,* 1999 WL 803970, at *7. Such implementation decisions "must respect the procedural safeguards of due process." *Danh,* 59 F.Supp.2d at 999 (*citing Fiallo v. Bell,* 430 U.S. 787, 792 n. 4, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977)).

Therefore, this Court will apply the more exacting standards of *Salerno.* In *Salerno,* the petitioner challenged provisions of the Bail Reform Act that required pretrial detention of arrestees charged with serious felonies. 107 S.Ct. at 2099–2100. While recognizing the liberty interest at stake, the *Salerno* Court also noted the government's interest in preventing future crimes by arrestees. *Id.* at 2103.

Courts must therefore balance these two competing interests.

Applying *Salerno*, section 236(c) will be upheld if the statute is regulatory in nature and not excessive to its purpose. *Id.* at 2101; *Galvez*, 56 F.Supp.2d at 646. It is undisputed that section 236(c) is regulatory in nature. *See, e.g., Galvez*, 56 F.Supp.2d at 646; *Chamblin*, 1999 WL 803970, at *10. The issue, therefore, is whether the restriction is excessive in relation to its purpose.

Defendants claim that section 236(c) "seeks to prevent clearly deportable criminal aliens with no realistic hope of relief from removal from absconding or committing further criminal acts during proceedings to effect their removal." Resps. Opp'n, p. 26. Defendants also claim that section 236(c) is part of a "deportation process" designed to "put certain targeted criminal aliens on a fast track for removal from our shores." *Id.* at pp. 30–31. According to Defendants, these are sufficiently compelling goals to satisfy even the more exacting *Salerno* standard.

Defendants also contend that the "[m]andatory detention is necessarily an integral part of Congress' streamlined removal process." *Id.* at 31. Defendants rely on a 1996 study by the Department of Justice finding that 89% of non-detained aliens subject to a final order of deportation failed to report for deportation when ordered to do so. Defendants contend that the regulations contain safeguards providing the "detained alien the right to an individualized hearing before an Immigration Judge (and administrative appeal) on the issue of whether he or she falls within the mandatory detention provisions." *Id.* at 32. They also contend that section 236(c) excludes the possibility of indefinite detention by limiting duration to the conclusion of removal proceedings and a 90–day removal period.

Defendants' first cited "safeguard," however, does not provide any protection for most detained individuals, and cannot be used as a justification for depriving a detainee of his liberty interest. The "individualized hearing" would only determine whether the detainee was eligible for the witness protection program. *See* 8 U.S.C. § 1226(c)(2); *Martinez*, 28 F.Supp.2d at 1283. If not, the Immigration Judge lacks authority to release him. *See* 8 U.S.C. § 1226(c)(2); *Martinez*, 28 F.Supp.2d at 1283. "[W]here, as here, a fundamental liberty interest is implicated, constitutional due process may not be parsed and distributed solely to the persons adjudged by Congress to deserve it." *Martinez*, 28 F.Supp.2d at 1283.

Defendants' second safeguard likewise does not help individuals like Welch. Section 241(a)(1) provides that the Attorney General shall remove the alien within a period of 90 days from the date the order of removal becomes administratively final. *See* 8 U.S.C. § 1231(a)(1). But, section 236(c) does not provide any time limits on detention pending issuance of that final order. *See* 8 U.S.C. § 1226(c). Welch, for example, has been in INS custody under the new charges since April 22, 1999, and has not received any review of his danger to the community or flight risk, as would be typical in a bail review hearing.

While Defendants claim that Welch will be placed on an expedited removal schedule, they are unable to provide any indication as to when that removal will occur. The Court notes that, after Welch was taken into custody on October 16, 1998, "INS promptly applied to the Consulate of Panama for issuance of a travel document which is necessary to effect Petitioner's deportation...." Resps. Opp'n, pp. 5–6. Although that application was sent more than a year ago, INS has yet to receive the necessary documents.

Section 236(c) simply does not offer safeguards designed to protect detainees against indefinite, or at least prolonged, detention. Given the liberty interest involved and the lack of safeguards, this Court finds section 236(c) excessive in relation to its purpose and, therefore, violative

of Welch's substantive due process rights. *See, e.g., Bouayad v. Holmes,* 74 F.Supp.2d 471, 476 (E.D.Pa.1999); *Danh,* 59 F.Supp.2d at 1001; *Van Eeton,* 49 F.Supp.2d at 1190; *Martinez,* 28 F.Supp.2d at 1283; *Chamblin,* 1999 WL 803970, at *10–11; *cf. Ngo v. INS,* 192 F.3d 390, 398 (3d Cir.1999) (in immigration context, indefinite detention without ongoing review of alien's danger to the community or flight risk violates due process); *Ma v. Reno,* 208 F.3d 815, 825–27 & nn. 23–24 (9th Cir.2000) ("seriously questioning" conclusion that indefinite detention, even in immigration context, is constitutional). *But see Parra v. Perryman,* 172 F.3d 954, 958 (7th Cir.1999) (section 236(c) is constitutional); *cf. Ho v. Greene,* 204 F.3d 1045, 1059–60 (10th Cir.2000) (holding that indefinite detention pending deportation is constitutional); *Zadvydas v. Underdown,* 185 F.3d 279, 291–97 (5th Cir.1999) (holding detention of alien pending deportation constitutional despite the fact that it was unlikely the individual would ever be deported, but noting that periodic review of request for release was required). Admittedly, the government has an interest in preventing future crimes, as well as flight, by individuals undergoing deportation proceedings. But, Congress has other "ways to rectify the problem of aliens absconding before deportation that do not implicate petitioners' right to freedom from arbitrary detention." *Danh,* 59 F.Supp.2d at 1001; *see also Ngo,* 192 F.3d at 398 ("The fact that some aliens posed a risk of flight in the past does not mean they will forever fall into that category. Similarly, presenting danger to the community at one point by committing crime does not place them forever beyond redemption."); *Bouayad,* 74 F.Supp.2d at 475 ("While the risk of flight by aliens may be significant, the public can still be pro-

tected by a careful evaluation of an individual alien's case, which should result in the detention of those who are likely to flee."). Congress' use of a blanket, irrefutable presumption is excessive in relation to its purpose of preventing flight and future crimes; a bail hearing could address the individual detainee's danger to the community.

Therefore, the Court finds that section 236(c) applies to Welch. The Court also finds that section unconstitutional since it violates Welch's substantive due process right, while detained pending judicial proceedings, to receive a bail hearing in which a judge would determine his flight risk and threat to the community. Accordingly, the Court orders the Defendants to provide Welch with a bail hearing before an Immigration Judge.[3]

## IV. Reopening the Prior Proceedings

Welch claims that, since the 1994 conviction has been vacated and can no longer justify the INS detention, INS must initiate new proceedings against him.[4] He further argues that these proceedings, based on an April 22, 1999 conviction, must proceed prospectively under the post-IIRIRA amendments. Defendants maintain, however, that INS does not have the authority to terminate the pre-IIRIRA deportation proceedings and reinitiate removal proceedings under the amended Act. INS relies on section 309(c) of the act which states that aliens who already are in deportation or exclusion proceedings prior to the effective date of the IIRIRA are not subject to those amendments.

In Petitioner's reply brief, as well as during oral arguments, counsel argued that *permitting the reopened proceedings to go forward under pre-IIRIRA law vio-*

---

3. Since the Court finds that section 236(c) violates Welch's substantive due process rights, the Court need not address whether the application of that section violates procedural due process.

4. The Court notes that Petitioner's March 9, 2000 fax to chambers shows that the proceedings have been reopened. Since Welch's constitutional objection had been previously raised in this Court, however, Welch will have the opportunity to present his constitutional argument in a supplemental brief.

lates Welch's Fifth Amendment Equal Protection and Due Process rights. Welch compares himself to other long-term resident aliens convicted of a misdemeanor in April 1999. While all other long-term resident aliens convicted on that day are subject to post-IIRIRA law, Welch remains subject to pre-IIRIRA law. He argues that, as a result, he is denied the right to relief, including cancellation of removal, under 8 U.S.C. § 1229b(a).[5]

Since this issue was first argued in Petitioner's reply brief, supplemental briefing on this issue would aid the Court in its determination. Therefore, Petitioner will have the opportunity to submit a memorandum, not to exceed ten pages, arguing why reopening the proceedings would violate his constitutional rights. Defendants will then have the opportunity to submit a response, likewise not to exceed ten pages, addressing Petitioner's arguments. This Court will reserve its decision on this issue until it has received those briefs.

---

**5.** In the reply brief, Welch contends that he will be denied the opportunity for cancellation of removal under 8 U.S.C. § 1252(a). The Court believes, however, that Welch is referring to the cancellation provisions of 8 U.S.C. § 1229b.