**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 5 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENH CIRCUIT

PHU CHAN HOANG, THANH QUOC
NGUYEN, and PHAM QUA TRUNG,

Petitioners-Appellees,

v.

MICHAEL COMFORT, Acting District
Director, United States Immigration and
Naturalization Service, Denver, Colorado,

Respondent-Appellant.

_____

CITIZENS AND IMMIGRANTS FOR
EQUAL JUSTICE; AMERICAN
IMMIGRATION LAWYERS
ASSOCIATION,

Amici Curiae.

No. 01-1136
No. 01-1180
No. 01-1343

**Appeal from United States District Court**
**for the District of Colorado**
**(D.C. Nos. 01-B-139, 01-K-256, 01-D-787)**

Michelle E. Gorden, Attorney (Emily Anne Radford, Assistant Director; Papu Sandhu,
Senior Litigation Counsel; Allen W. Hausman, Senior Litigation Counsel; and Joshua E.
Braunstein, Attorney, with her on the briefs), Office of Immigration Litigation, Civil
Division, Department of Justice, Washington, D.C., for Respondent-Appellant.

Judy Rabinovitz, American Civil Liberties Union Foundation, New York, New York (Liliana M. Garces, American Civil Liberties Union Foundation, Oakland, California, and Jim Salvator, Lafayette, Colorado, with her on the brief), for Petitioners-Appellees.

Marvin E. Frankel and Jennifer L. Rochon of Kramer, Levin, Naftalis & Frankel LLP, New York, New York, and Nancy Morawetz, of Washington Square Legal Services, Inc., New York, New York, on the brief for Citizens and Immigrants for Equal Justice and American Immigration Lawyers Association, Amici Curiae.

---

Before **BRISCOE** and **BALDOCK**, Circuit Judges, and **ALLEY**, District Judge.[1]

---

**BRISCOE**, Circuit Judge

---

The United States Immigration and Naturalization Service (INS) appeals the district court's rulings in three cases which held that Section 236(c) of the Immigration and Nationality Act, 8 U.S.C. § 1226(c), (INA) is unconstitutional as violative of both substantive and procedural due process. Section 236(c) of the INA requires the mandatory detention of criminal aliens pending administrative removal proceedings. We agree that the mandatory detention provision found in § 236(c) of the INA, as applied to petitioners, violates their substantive due process rights and affirm the district court.

I.

Under the INA as first enacted in 1952, an alien convicted either of a crime involving moral turpitude if the crime was committed within five years of entry into the

---

[1] The Honorable Wayne E. Alley, United States District Court for the Western District of Oklahoma, sitting by designation.

United States or a crime violating drug or firearm laws was subject to deportation. INA § 241, codified at 8 U.S.C. § 1251 (1952). However, the INA provided the Attorney General with discretion to release such aliens on bond pending final determination of deportability. INA § 223, codified at 8 U.S.C. § 156 (1952).

In 1988, Congress amended the INA as part of the Anti-Drug Abuse Act of 1988 (ADAA). The ADAA established a new category of deportable alien, the aggravated felon, which included any alien who committed crimes involving murder, drug trafficking, illicit trafficking in firearms and destructive devices, and any attempt or conspiracy to commit such crimes. ADAA § 7342, amending 8 U.S.C. § 1251(a). Under the ADAA, detention of such aliens pending removal proceedings was mandatory. ADAA § 7343(a).

However, a majority of federal district courts addressing the issue found the mandatory detention provision of the ADAA unconstitutional. *See Martinez v. Greene*, 28 F. Supp. 2d 1275, 1279 (D. Colo. 1998), and cases cited therein. As a result, Congress amended the mandatory detention statute in 1990 and 1991 to permit the release of aggravated felons who were lawfully admitted to the United States and who could demonstrate they were not a threat to the community and were likely to appear for their hearings. *Id.*

In 1996, Congress passed the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Stat. 1214 (AEDPA). The AEDPA created automatic

3

mandatory detention without bond for aggravated felons and other non-citizens with criminal convictions. INA § 242(a)(2), codified at 8 U.S.C. § 1252. *See Martinez*, 28 F. Supp. 2d at 1280. However, the AEDPA's amendment was almost immediately replaced with the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, 110 Stat. 1570, which amended the INA to include § 236(c), the provision at issue here.

Section 236(c), codified at 8 U.S.C. § 1226(c), is a mandatory pre-removal detention provision directed at criminal aliens. It directs, in pertinent part, that:

> The Attorney General shall take into custody an alien who--
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been [sentenced] to a term of imprisonment of at least 1 year, or
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1). Thus, under § 236(c), the Attorney General is directed to detain "deportable" criminal aliens following release from their original sentences prior to decisions on their removal from the United States. The Attorney General has discretion to release an alien only if the alien or an immediate family member is participating in the federal Witness Protection Program and the alien "satisfies the Attorney General that the

4

alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(2).

Section 236(c) did not immediately become applicable with the passage of the IIRIRA. Instead, the IIRIRA contained "transition period custody rules" which provided immigration bond hearings to aliens with criminal convictions wherein the aliens were allowed to demonstrate legal entry and that they did not present a substantial risk of flight or threat to persons or property. The immigration court had discretion to set bond pending final administrative action. *See* IIRIRA § 303(b)(3); *Martinez*, 28 F. Supp. 2d at 1280. The transition rules expired on October 9, 1998, and § 236(c) became effective.

## II.

The three petitioners in these cases, Thanh Quoc Nguyen, Phu Chang Hoang and Pham Qua Trung, were all detained pursuant to § 236(c).

### Thanh Quoc Nguyen

Nguyen entered the United States as a refugee from Vietnam in 1991 at the age of fifteen. He was admitted as a lawful permanent resident.

In February 1999, Nguyen pled guilty to the misdemeanor offense of threat/use of a dangerous weapon in a fight. He was sentenced to 365 days in jail, with 320 days suspended. Due to probation violations, he ultimately served his entire sentence. Upon completion of his sentence, he was detained by the INS, which had earlier commenced removal proceedings.

On February 12, 2001, after approximately three months in custody, Nguyen petitioned for a writ of habeas corpus arguing that § 236(c), as applied, was unconstitutional. He also filed an application for a temporary restraining order asking for an individual bond hearing. On February 13, 2001, the district court granted a permanent injunction and ordered the INS to provide a bond hearing. After a hearing, Nguyen was released on $8,000 bond.

Nguyen is currently seeking a withholding of removal under the INA, as well as relief under the Convention Against Torture, 8 C.F.R. § 208.18 (2001). He is also seeking post-trial relief in state court. Specifically, he seeks reduction of his sentence by one day, which would make him eligible to apply for cancellation of removal. *See* 8 U.S.C. § 1226(c)(1)(C).

<u>Phu Chang Hoang</u>

Hoang entered the United States as a refugee from Vietnam in 1979 at the age of three. He was admitted as a lawful permanent resident.

In February 1993, at the age of sixteen, Hoang pled guilty to two counts of aggravated robbery in connection with the stealing of a purse and wallet by use of force, threats, and intimidation with the aid of a firearm. He was sentenced to ten years on each count, to be served consecutively. Hoang served eight and a half years and was released, whereupon he was detained by the INS and removal proceedings were begun.

On January 24, 2001, some two months after being detained, Hoang petitioned for

6

a writ of habeas corpus arguing that § 236(c), as applied, was unconstitutional. He also filed an application for a temporary restraining order requesting an individual bond hearing. The district court granted a final injunction in favor of Hoang directing the INS to conduct a bond hearing. After the hearing, Hoang was released on $20,000 bond. Hoang is currently seeking relief for removal under the Convention Against Torture.

Pham Qua Trung

Trung entered the United States as a refugee from Vietnam in 1987 at the age of fifteen. He was admitted as a lawful permanent resident.

On August 9, 2000, Trung pled guilty to two counts of forgery in Utah state court. He was sentenced to an indeterminate term not to exceed five years, and was required to serve thirty days. Upon completion of his sentence, he was detained by the INS, which had begun removal proceedings a month earlier.

On April 27, 2001, after more than a month in detention, Trung petitioned for a writ of habeas corpus arguing that § 236(c), as applied, was unconstitutional. Trung also filed an application for temporary restraining order, requesting an individual bond hearing. The district court granted the order and directed the INS to conduct a bond hearing. After a hearing, Trung was released on $7,500 bond.

Trung is currently seeking withholding of removal under the Convention Against Torture, and is also challenging the INS's contention that his forgery conviction constitutes an aggravated felony under the INA. 8 U.S.C. § 1227(a)(2)(A). If the

challenge is successful, Trung would be eligible to apply for cancellation of removal. In addition, he is seeking a reduction of his sentence in state court which would render him eligible for cancellation or removal.

III.

In all three appeals, we are asked to review the district court's ruling that § 236(c) is unconstitutional. Although § 236(e) of the INA, 8 U.S.C. § 1226(e), provides that "[t]he Attorney General's discretionary judgment regarding the application of [§ 236] shall not be subject to review," courts retain jurisdiction over habeas petitions which include constitutional challenges. *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999). *See Ho v. Greene*, 204 F.3d 1045, 1051-52 (10th Cir. 2000), *overruled on other grounds by Zadvydas v. Davis*, 121 S. Ct. 2491 (2001).

Statutes are presumed to be constitutional. *See United States v. Pompey*, 264 F.3d 1176, 1179 (10th Cir. 2001). This court reviews challenges to the constitutionality of a statute under a de novo standard. *Id.*

The constitutionality of § 236(c) in the face of a due process challenge has been addressed by numerous courts, with conflicting results. The Seventh Circuit has held that § 236(c) does not violate either substantive or procedural due process. *See Parra*, 172 F.3d at 958. The Third Circuit and the Ninth Circuit have held that § 236(c) does violate substantive due process. *See Patel v. Zemski*, 275 F.3d 299 (3rd Cir. 2001); *Kim v. Ziglar*, 276 F.3d 523 (9th Cir. 2002).

8

IV.

As a preliminary issue, the government argues that the district court's decisions in Hoang's and Nguyen's cases should be reversed and the habeas petitions in those cases dismissed for failure to exhaust administrative remedies. The government contends that comprehensive administrative procedures are available under Title 8 of the Code of Federal Regulations for aliens to dispute that § 236(c) applies to them and to seek bond. *See* 8 C.F.R. §§ 3.19 and 236.1. Therefore, according to the government, Hoang and Nguyen should follow those procedures before being allowed to file habeas actions.

With regard to immigration laws, exhaustion of remedies is statutorily required only for appeals of final orders of removal. *See* 8 U.S.C. § 1252(d)(1). The government does not contend that exhaustion is statutorily mandated, but instead argues that exhaustion should be required to protect administrative authority and promote judicial efficiency, citing *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992).

We disagree. While *McCarthy* provides that courts may, in their discretion, require exhaustion of administrative remedies, there are "at least three broad sets of circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion": 1) where requiring resort to an administrative remedy may cause undue prejudice to the assertion of a subsequent court action, as where the time period required for administrative action is unreasonable or indefinite; 2) where the administrative remedy is inadequate because of doubt as to whether the agency is

9

empowered to grant relief; and 3) where the administrative remedy is inadequate because the administrative body is biased or has otherwise predetermined the issue before it. 503 U.S. at 146-149. All three of these categories apply here.

First, a petitioner's detention during the period required for the exhaustion of remedies may infringe upon his or her rights, especially where the issue sought to be raised, the constitutionality of § 236(c), is one which does not implicate the discretion or the expertise of the agency involved. *See Welch v. Reno*, 101 F. Supp. 2d 347, 351-52 (D. Md. 2000). Second, the agency involved, the Board of Immigration Appeals (BIA), does not have the power to reach constitutional arguments, and thus is not empowered to grant effective relief. *See Yanez v. Holder*, 149 F. Supp. 2d 485, 489-90 (N.D. Ill. 2001); *Welch*, 101 F. Supp. 2d at 351-52. Third, the BIA has previously ruled that it is barred by § 236(c) from granting bond, and therefore any attempt by a petitioner to exhaust would be futile. *See Galvez v. Lewis*, 56 F. Supp. 2d 637, 644 (E.D. Va. 1999).

As a result, we decline to reverse the district court's decisions in Hoang's and Nguyen's cases for failure to exhaust administrative remedies, and instead proceed to the question of whether § 236(c) violates the petitioners' due process rights.

V.

The Due Process Clause of the Fifth Amendment provides that "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." This Court has held that the Due Process Clause protects individuals against two types of government action. So-called "substantive due process" prevents the government from engaging in conduct that "shocks the conscience," or interferes with rights "implicit in the concept of

10

ordered liberty."  When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner.  This requirement has traditionally been referred to as "procedural" due process.

*United States v. Salerno*, 481 U.S. 739, 746 (1987) (internal citations omitted).

The petitioners' challenge is to the constitutionality of § 236(c) as applied to them, rather than a facial challenge.  Therefore, in order to prevail, they need only show that the statute, as applied to their particular situations, violates due process.

Nature of Petitioners' Interest

The first step in any due process analysis is a careful identification of the asserted right.  *See Reno v. Flores*, 507 U.S. 292, 302 (1993).  If the liberty interest asserted by the petitioners may be characterized as fundamental, then a governmental provision infringing upon that interest must be narrowly tailored to serve a compelling governmental interest.  *See id.*

The government argues that the petitioners' alleged interests are not fundamental because, as aliens who are subject to § 236(c), the petitioners have forfeited any rights to remain in the country and thus any liberty interests they may have had are greatly diminished.  The government contends that the petitioners' interests should therefore be characterized, in accordance with the holding in *Parra*, as "not liberty in the abstract, but liberty in the United States by someone no longer entitled to remain in this country but eligible to live at liberty in his native land."  *See* 172 F.3d at 958.  The Seventh Circuit found that this interest was not fundamental because

11

[p]ersons subject to [§ 236(c)] have forfeited any *legal* entitlement to remain in the United States and have little hope of clemency. . . . Before the IIRIRA bail was available to persons in Parra's position as a corollary to the possibility of discretionary relief from deportation; now that this possibility is so remote, so too is any reason for release pending removal. Parra's legal right to remain in the United States has come to an end. An alien in Parra's position can withdraw his defense of the removal proceeding and return to his native land, thus ending his detention immediately. He has the keys in his pocket. A criminal alien who insists on postponing the inevitable has no constitutional right to remain at large during the ensuing delay, and the United States has a powerful interest in maintaining the detention in order to ensure that removal actually occurs.

*Id.*

We do not agree with the Seventh Circuit's determination that an alien who is subject to § 236(c) has somehow forfeited his or her right to liberty during deportation proceedings. A similar argument was recently rejected in *Zadvydas v. Davis*, 121 S. Ct. 2491, 2501 (2001). In *Zadvydas*, the Court held that even an alien who had already been ordered to be deported retained a liberty interest strong enough to raise a due process challenge concerning his or her indefinite and possibly permanent detention resulting from the inability to carry out the deportation order. In so holding, the Court expressly rejected the government's position that "whatever liberty interest the aliens possess, it is 'greatly diminished' by their lack of a legal right to 'liv[e] at large in this country.'" *Id.* at 2502. In the wake of the Court's ruling in *Zadvydas*, the vitality of the Seventh Circuit's holding in *Parra* is greatly diminished, as is the government's argument which relies upon *Parra*.

The petitioners in this case are presently lawful permanent residents of the United

States.  Although they are "deportable" because of their criminal records, they remain lawful permanent residents until such time as they are finally ordered deported.  *See* 8 C.F.R. § 1.1(p) (stating that lawful permanent resident status terminates upon entry of a final administrative order of exclusion or deportation).  Aliens who are lawful permanent residents of and are physically present in the United States are persons within the protection of the Fifth Amendment, and may not be deprived of life, liberty or property without due process of law.  *See Kwong Hai Chew v. Colding*, 344 U.S. 590, 596 (1953).

The petitioners are not asserting that the Government has no right to detain them incident to their deportation proceedings.  Indeed, such an argument would be futile, as the government's power to detain pursuant to deportation proceedings is well established.  *See Wong Wing v. United States*, 163 U.S. 228, 235 (1896) (stating that detention necessary to carry out deportation would be valid).  Rather, the petitioners are asserting they have a fundamental liberty interest that may not be arbitrarily infringed upon by the Government absent an opportunity for an individualized hearing to address risk of flight and danger to the public.  That is the liberty interest at issue in this case.

The question then becomes whether the petitioners' liberty interest is a fundamental right, thus triggering heightened scrutiny.  The government contends that the right of an alien to be free from detention is not a fundamental right, citing *Flores*.  In *Flores*, the Supreme Court addressed the constitutionality of a regulation which permitted the release of detained juvenile aliens, arrested on suspicion of being deportable, only to

13

their parents, legal guardians, adult relatives, or other appointed and approved caregivers. 507 U.S. at 297. If no one in this category was available, the regulation required the juvenile's placement in a foster care facility.

In categorizing the right of the juveniles to other placement, the Court refused to find the right to be fundamental, stating that:

> The "freedom from physical restraint" invoked by respondents is not at issue in this case. Surely not in the sense of shackles, chains, or barred cells, given the Juvenile Care Agreement [authorizing placement only in certain juvenile care facilities]. Nor even in the sense of a right to come and go at will, since, as we have said elsewhere, "juveniles, unlike adults, are always in some form of custody," and where the custody of the parent or legal guardian fails, the government may (indeed, we have said *must*) either exercise custody itself or appoint someone else to do so. Nor is the right asserted the right of a child to be released from all other custody into the custody of its parents, legal guardian, or even close relatives: The challenged regulation requires such release when it is sought. Rather, the right at issue is the alleged right of a child who has no available parent, close relative, or legal guardian, and for whom the government is responsible, to be placed in the custody of a willing-and-able private custodian rather than of a government-operated or government-selected child-care institution.

*Id.* at 302 (internal citations omitted). Applying only rational basis scrutiny, the Court found the regulation did not violate due process. *Id.* at 303-06.

*Flores*, however, is distinguishable from the instant case. The petitioners here are adults, and thus have the right to come and go at will. Further, although the juveniles in *Flores* were not facing physical restraint in the sense of shackles, chains, or barred cells, that is exactly the form of restraint the petitioners face here.

"Freedom from bodily restraint has always been at the core of the liberty protected

14

by the Due Process Clause." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). "In our society liberty is the norm, and detention prior to trial or without trial is a carefully limited exception." *Salerno*, 481 U.S. at 755. Even in the context of aliens, government detention violates the Due Process Clause unless the detention is ordered in a criminal proceeding with adequate procedural protections, or in "certain special and narrow nonpunitive circumstances. . . where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 121 S. Ct. at 2499 (internal citations omitted). In *Salerno*, the Court recognized that a person who is detained pending trial has a fundamental liberty interest in freedom from restraint. *See* 481 U.S. at 750-51. The liberty interest of a person who is detained pending deportation proceedings is no less fundamental. *See Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir. 1981) (analogizing detention pending trial with detention pending deportation proceedings). As a result, we conclude that the petitioners have a fundamental liberty interest in freedom from detention pending deportation proceedings that may only be infringed upon in certain limited circumstances.

Congressional Authority in Immigration

The government argues that § 236(c) is constitutional given the power of Congress in the area of immigration. The government contends that Congress' broad power to legislate in the area of immigration limits judicial review of Congress' decisions with regard to detention pending deportation and removal hearings.

15

Congress has plenary authority over substantive immigration decisions under Art. I, § 8, cl. 4 of the Constitution. *See INS v. Chadha*, 462 U.S. 919, 941 (1983). "'[O]ver no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (quoting *Oceanic Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909)). This power is of a political character which is subject only to narrow judicial review. *See Fiallo*, 430 U.S. at 792. However, statutes which implement this plenary authority are subject to the limits of the Constitution. *See Zadvydas*, 121 S. Ct. at 2501; *Chadha*, 462 U.S. at 940-41. Thus, while aliens are subject to the plenary power of Congress to expel them, Congress' implementation of this authority must comport with the Constitution. *See Carlson v. Landon*, 342 U.S. 524, 534-37 (1952).

In *Chadha*, the Court rejected the argument that the plenary power of Congress required courts to uphold the constitutionality of INA § 244(c)(2), which gave either house of Congress a veto over decisions by the Attorney General to suspend deportation proceedings. In concluding that this statute was subject to due process review, the Court stated: "The plenary authority of Congress over aliens under Art I, § 8, cl 4, is not open to question, but what is challenged here is whether Congress has chosen a constitutionally permissible means of implementing that power." 462 U.S. at 940-41. Similarly, in *Zadvydas*, the Court rejected the Government's argument that Congress' plenary power over immigration gave it the power to indefinitely detain aliens who had been found to be

16

removable but could not be removed because their home countries would not take them. The Court noted:

> The question before us is not one of "confer[ring] on those admitted the right to remain against the national will" or "sufferance of aliens" who should be removed. Rather, the issue we address is whether aliens that the Government finds itself unable to remove are to be condemned to an indefinite term or imprisonment within the United States.

121 S. Ct. at 2501 (internal citations omitted).

Like the statutes at issue in *Chadha* and *Zadvydas*, § 236(c) concerns the method by which the immigration statutes are implemented and not the political substantive decision of who is to be admitted or excluded. As such, § 236(c) must comply with the Constitution. *See Chadha*, 462 U.S. at 940-41.

Substantive Due Process

Where the right implicated in a substantive due process analysis is fundamental, the Government may not infringe upon it, regardless of the process provided, unless the infringement is narrowly tailored to serve a compelling state interest. *See Flores*, 507 U.S. at 302. Governmental detention in a non-criminal proceeding offends the Due Process Clause except in certain non-punitive circumstances where a special justification outweighs the individual's constitutionally protected interest in avoiding physical restraint. *See Zadvydas*, 121 S. Ct. at 2499.

Thus, in order to pass constitutional muster, § 236(c) must first be non-punitive. *See id.*; *Salerno*, 481 U.S. at 746-47. In determining whether a restriction on liberty

17

constitutes punishment, we initially look to whether Congress intended the statute to be punitive, or whether another purpose may rationally be assigned to the restriction on liberty. *See Salerno*, 481 U.S. at 747; *Bell v. Wolfish*, 441 U.S. 520, 537 (1979). If Congress intended the restriction on liberty to be punishment, or if there is no other purpose that may rationally be assigned to it, it is punitive. However, even if a restriction was not meant to be punishment and a non-punitive purpose may be rationally assigned to it, the restriction may still constitute punishment if it imposes conditions so excessive in relation to the assigned purpose as to be considered punitive rather than regulatory. *See Salerno*, 481 U.S. at 747; *Bell*, 441 U.S. at 537.

Our analysis of the statute leads us to conclude that § 236(c) is non-punitive. Nothing in the legislative history of § 236(c) suggests that mandatory detention was intended by Congress as a punishment for aliens. Rather, a review of the legislative history indicates that the mandatory detention provision was designed to serve two legitimate nonpunitive purposes: ensuring removal by preventing the alien from fleeing, and protecting the community from further criminal acts or other dangers. *See* S. Rep. No. 104-48, 104th Cong., 1st Sess. (1995) at 23-27, 31-32; 63 Fed. Reg. 27441, 27442 (May 19, 1998). The detention imposed by § 236(c) is rationally related to these two purposes. Further, the detention imposed is not so excessive in relation to the two purposes of the statute as to constitute punishment.

We turn to the second part of the analysis -- whether the purposes espoused for the

18

mandatory detention provision, flight prevention and crime prevention, constitute special justifications which outweigh the individual's constitutionally protected interest in avoiding physical restraint. *See Zadvydas*, 121 S. Ct. at 2499. Our analysis of this issue entails a determination of whether the government's interest is compelling and whether the statute is narrowly tailored such that the government's interest outweighs that of the individual. *See Salerno*, 481 U.S. at 749-51.

The government contends that the mandatory detention provision contained in § 236(c) is necessary to protect against the risk of flight by deportable aliens. According to the government, Congress determined that the detention was necessary to ensure that deportable aliens appeared for their deportation proceedings. The government reasons that because those persons subject to § 236(c) are likely to be deported, they may be presumed to be flight risks.

Certainly, the government has a compelling interest in ensuring attendance by deportable aliens at deportation proceedings. However, § 236(c) is not narrowly tailored to achieve that interest. Rather than establishing a procedure to determine which aliens might be flight risks, it establishes an irrebuttable presumption that all aliens to which mandatory detention applies are flight risks.

The government argues that certain presumptions with regard to immigration are valid, citing *Carlson*, 342 U.S. 524. In *Carlson*, the Court addressed a provision which allowed the Attorney General to detain without bail, pending deportation, those aliens

19

who were members of the Communist Party. The Court found the provision to be constitutional, reasoning that "[d]etention is necessarily a part of this deportation procedure" because otherwise "aliens arrested for deportation would have opportunities to hurt the United States during the pendency of deportation proceedings." *Id.* at 538.

*Carlson*, however, does not support the government's argument. The detention provision in *Carlson* was not categorically applied, but instead was based on an individual determination of dangerousness made by the Attorney General, and the decision to detain without bail was subject to judicial review. The Court in *Carlson* expressly rejected the idea that intent to injure could be imputed to all aliens who were subject to deportation as members of the Communist Party. *Id.* at 542. Unlike the detention provision at issue in *Carlson*, § 236(c) does not provide for an individual determination of risk of flight, choosing instead to impute flight risk to all criminal aliens.

The Senate Report which spawned the creation of § 236(c) found that over 20% of non-detained aliens did not appear for their deportation proceedings. S. Rep. No. 104-48 at 23-24. Presumably, however, this means that somewhere near 80% of non-detained aliens in that time period did in fact appear. It is true that the more likely a person is to be removed, the less likely it is that the person will appear for removal proceedings. Nevertheless, a risk of flight cannot be imputed to all who fit the broad category of persons affected by § 236(c). The fallacy in such a blanket assumption is especially pertinent as applied to the petitioners here. All three petitioners are currently pursuing

20

avenues which, if successful, would lessen the probability that they will be deported or removed. Thus, they have a significant incentive to attend deportation proceedings.

The risk of flight posed by some criminal aliens is insufficient to justify the mandatory detention of all aliens who meet the criteria under § 236(c). Although the government has a compelling interest in ensuring that deportable aliens appear for their proceedings, this interest is not sufficient to justify detention of a lawful permanent resident alien absent an individualized determination that the alien is in fact a flight risk.

The second asserted reason for mandatory detention, the safety of the public, provides even less justification for such detention. While it cannot be denied that the government has a compelling interest in protecting the public from dangerous aliens, § 236(c) applies the blanket irrebuttable presumption that all those to whom it applies are dangerous, a presumption not justified by the nature of offenses which § 236(c) encompasses. Offenses to which the mandatory detention provision in § 236(c) applies include not only dangerous offenses such as murders, rapes, crimes of terrorist activity, violations of the controlled substances and firearms laws, and crimes committed by repeat offenders, but also less dangerous offenses such as crimes of moral turpitude with a sentence of one year in prison, theft offenses with a term of imprisonment of one year or more, fraud, tax evasion, assisting document fraud in some cases, and perjury. *See* 8 U.S.C. § 1226(c); 8 U.S.C. §1101(a)(43).

Absent an individualized determination of dangerousness, it cannot simply be

assumed that persons who have at one time been convicted of the crimes encompassed by § 236(c) pose a danger to the public. However, this is exactly what § 236(c) does. Given the wide range of offenses covered by § 236(c), the safety of the public does not justify its mandatory detention of lawful permanent resident aliens without individualized determinations that they in fact pose a danger to the public.

Any argument that § 236(c)'s blanket presumption of flight risk and dangerousness is narrowly tailored is further undermined by the results of the bond hearing granted to the petitioners by the district court. After an examination of their individual circumstances, all three petitioners were ordered released on various amounts of bond, thus refuting the proposition that they were such flight risks or so dangerous that mandatory detention was required.

We therefore conclude that the government has failed to show special justifications for the mandatory detention provision contained in § 236(c) which are sufficient to outweigh a lawful permanent resident alien's constitutionally protected liberty interest in avoiding physical restraint without an individualized determination of flight risk or danger to the public. Therefore, we hold that § 236(c) violates the petitioners' rights to substantive due process. Our holding in this regard makes it unnecessary for us to reach the petitioners' claim that § 236(c) also deprives them of procedural due process.

## VI.

There is a question as to whether we should adopt a construction of § 236(c) which

would be constitutional. Where one construction of a statute would raise serious constitutional problems but an alternative interpretation is fairly possible and would avoid such problems, the alternative interpretation should be adopted. *See INS v. St. Cyr*, 121 S. Ct. 2271, 2279 (2001). The petitioners contend that such an alternative interpretation is possible if we were to construe the term "is deportable" in § 236(c) to mean "subject to a final order of removal." Under this interpretation, § 236(c) would only impose mandatory detention on those aliens who had received a final order of removal.

However, it is clear from the text of the statute that Congress intended the "is deportable" language of § 236(c) to apply prior to a final order of removal. Given this clear intention of Congress, we may not adopt a saving construction that is plainly contrary to this intent. *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994).

## VII.

We hold that the mandatory detention provision of § 236(c), as applied to the petitioners as lawful permanent resident aliens, violates their right to substantive due process.

AFFIRMED.