**Dorid MAROGI, Petitioner**

v.

**Carol JENIFER, et al., Respondents**

**No. 00–CV–74443–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 15, 2000.

Mary D. Rigdon, Assist. U.S. Atty., Detroit, MI, for petitioner.

David K. Wenger, Detroit, MI, for respondents.

### OPINION AND ORDER DENYING AND DISMISSING PETITION FOR HABEAS CORPUS

CLELAND, District Judge.

### I. BACKGROUND

The facts are not in dispute. Dorid Marogi, a citizen of Iraq, was lawfully admitted into the United States as a refugee on July 13, 1982. Twice in little more than a year, Marogi was convicted by his plea of guilty to the felony of delivery and/or manufacture of marijuana: the first crime was committed in August 1998, for which he was sentenced in December of that year to 20 days in jail and 18 months probation. The second arose from an incident that occurred while he was on probation and only several months after his first sentencing: he was again apprehended in a marijuana delivery incident in July 1999, pleaded guilty, and was sentenced in January 2000 to 9 months in jail and 2 years of probation.[1] Thus, commencing in August 2000, Marogi has been detained by the United States Immigration and Naturalization Service ("INS") pursuant to Title 8 of the United States Code, which imposes mandatory detention of criminal aliens convicted of certain crimes. 8 U.S.C. § 1226(c); INA § 236(c).

Because these convictions render Marogi deportable under 8 U.S.C. § 1227(a)(2)(A)(iii) (convictions of aggravated felonies, including drug trafficking) and § 1227(a)(2)(B)(i) (convictions of any law relating to a controlled substance), the INS has detained him, pending the conclusion of his removal proceedings. At an administrative hearing on September 12, 2000, Marogi requested that bond be set in his case. Because Marogi came within the mandatory detention requirement of § 236(c), the immigration judge ruled that she did not have jurisdiction to determine whether he was a suitable bond candidate. Marogi then conceded that he was removable (id.) and filed an application for the withholding of removal under regulations promulgated pursuant to the Convention Against Torture ("CAT"). See 8 C.F.R. 208.16, 208.17.[2] Withholding was denied by an immigration judge on October 31, 2000. On November 24, 2000, Marogi appealed that decision to the Bureau of Immigration Appeals ("BIA" or "Bureau").

In his petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241(c), Marogi challenges the mandatory detention under INA § 236(c) as unconstitutional under the Eighth Amendment's prohibition against excessive bail and the Fifth Amendment's Due Process Clause.

### II. DISCUSSION

Before reaching the substance of Marogi's petition for a writ of habeas corpus under 28 U.S.C. § 2241, the court must determine whether there is any impediment to the exercise of its jurisdiction over this matter. There are two potential challenges to the court's habeas jurisdiction. First, it must be determined whether habeas review is precluded by the INA. Second, it must be determined whether Marogi's failure to exhaust administrative remedies prohibits this court from addressing his constitutional claims. The court concludes that neither challenge precludes it from exercising jurisdiction over Marogi's petition.

#### A. Availability of Habeas Review

The overwhelming majority of courts addressing constitutional challenges to

---

**1.** Marogi was also sentenced to 273 days for violating his probation. (Opp.Mem., Ex. 4.)

**2.** Although Marogi has conceded that he is removable, neither party has asserted that a final order of removal has been entered; presumably entry of such an order is pending resolution of the CAT appeal.

§ 236(c) and related INA provisions have concluded that habeas review under 28 U.S.C. § 2241 is not precluded. *See Martinez v. Greene*, 28 F.Supp.2d 1275, 1279 (D.Colo.1998) (listing cases). Although the INS has not challenged the court's habeas jurisdiction in this case, two statutory provisions often have been invoked to support such a challenge in other cases.

■ First, INA § 242(g), codified at 8 U.S.C. § 1252(g), provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). In *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), however, the United States Supreme Court narrowly interpreted this provision as covering only the three specific situations listed: (1) decisions to commence proceedings, (2) decisions to adjudicate cases, and (3) decisions execute removal orders. *Id.* at 482–87, 119 S.Ct. 936. In this case, Marogi does not challenge the Attorney General's decision to commence proceedings against him, to adjudicate his case, or to execute his removal order. Rather, his claim challenges the constitutionality of the statute itself. Section 1252(g), therefore, does not foreclose § 2241 habeas review of his claims. *Accord Parra v. Perryman*, 172 F.3d 954 (7th Cir.1999); *Ho v. Greene*, 204 F.3d 1045, 1051 (10th Cir.2000); *but see Richardson v. Reno* 180 F.3d 1311 (11th Cir.1999) (holding that § 2241 jurisdiction was precluded by IIRIRA's [3] permanent rules).

■ Second, INA § 236(e), codified at 8 U.S.C. § 1226(e), states as follows:

The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e). This section also, however, should not be construed as precluding § 2241 habeas review in this case. Rather, like § 1252(g), § 1226(e) "deals with challenges to operational decisions, rather than to the legislation establishing the framework for those decisions." *Parra*, 172 F.3d at 957. Again, Marogi does not challenge the propriety of the Attorney General's having implemented the statute against him, but rather the constitutionality of the statute. Hence, the court finds that § 1226(e) does not preclude its exercise of § 2241 habeas jurisdiction.

This conclusion is supported, if not required, by the decision of the United States Court of Appeals for the Sixth Circuit in *Pak v. Reno*, 196 F.3d 666 (6th Cir.1999). In *Pak*, the court joined the majority of courts to hold that habeas corpus jurisdiction under § 2241 for criminal aliens whose petitions fall within the purview of the IIRIRA's transitional rules was not precluded. Although this case is governed by the permanent and not the transitional rules, the analysis of the Sixth Circuit is still applicable. Specifically, the Sixth Circuit held that "any repeal of the federal courts' historic habeas jurisdiction must be explicit and make express reference specifically to the statute granting jurisdiction." *Pak*, 196 F.3d at 672 (citing *Felker v. Turpin*, 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996); *Goncalves v. Reno*, 144 F.3d 110, 121 (1st Cir.1998)). Further, the court noted its obligation to read statutes to avoid "serious constitutional problems, such as those we would face were IIRIRA read to take away habeas jurisdiction." *Pak*, 196 F.3d at 673.

**3.** IIRIRA is the Illegal Immigration Reform and Immigrant Responsibility Act, passed in 1996, which was Congress's latest major overhaul of the immigration laws. The IIRIRA enacted temporary provisions that governed all cases initiated prior to April 1, 1997. Because this case was commenced after that time, the IIRIRA's permanent rules apply.

Neither § 1252(g) nor § 1226(e) explicitly and expressly revokes the court's habeas jurisdiction. Therefore, to avoid the serious constitutional problems that otherwise would arise, the court finds that § 2241 habeas review is not precluded by these sections.

## B. Failure to Exhaust

■ Under the doctrine of exhaustion of administrative remedies, "a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself." *Howell v. Immigration and Naturalization Service*, 72 F.3d 288, 291 (2d Cir.1995) (citing *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938)). The INS argues that this doctrine bars review of Marogi's habeas petition because either (1) he did not appeal the denial of bond and/or (2) the Bureau of Immigration Appeals has not yet ruled on his appeal of the bond and/or CAT decisions. Marogi counters that awaiting further administrative adjudication would be futile, because his claim that § 236(c) is unconstitutional cannot be addressed by the administrative tribunal. For the following reasons, the court adopts Marogi's position and excuses his failure to exhaust all available administrative remedies.

"Where Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1991). Where Congress has not clearly mandated, however, whether to require exhaustion is within the sound discretion of the court. *See id.* In this case, Congress has not mandated exhaustion of administrative remedies. Accordingly, it is within the court's discretion to determine whether exhaustion should be required. In making this determination, the court "must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *Id.* at 146, 112 S.Ct. 1081.

The United States Supreme Court has recognized at least three "broad sets of circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion." *Id.* at 146, 112 S.Ct. 1081. One such set of circumstances is implicated in this case:

[A]n administrative remedy may be inadequate because of some doubt as to whether the agency was empowered to grant effective relief. For example, an agency, as a preliminary matter, may be unable to consider whether to grant relief because it lacks institutional competence to resolve the particular type of issue presented, *such as the constitutionality of the statute.*

*Id.* at 147–48, 112 S.Ct. 1081 (emphasis added) (internal citations omitted). In this case, Marogi directly challenges the constitutionality of INA § 236(c). The BIA has expressly stated that it lacks authority to adjudicate this question. *In re Joseph*, Int. Dec. 3387 at 6 (BIA 1999) ("We note that it is not within the purview of this Board to pass upon the constitutionality of the mandatory detention provision in section 236(c)(1)."); *see also Liu v. Waters*, 55 F.3d 421, 425 (9th Cir.1995) ("[T]he BIA lacks jurisdiction to decide questions of the constitutionality of governing statutes or regulations."). This court thus is the only forum available to address Marogi's claim. Accordingly, Marogi's interests "weigh heavily against requiring administrative exhaustion." [4]

---

**4.** The INS cites to several cases to support the proposition that challenging detention on constitutional grounds "does not end the inquiry on the issue of exhaustion. While the Bureau generally does not decide questions of constitutionality of statutes or regulations, federal courts have recognized that this general rule does not prevent the Bureau's consideration of issues involving administratively correctable error." (Opp. Mem. at 5.) The cases cited, however, simply distinguish between "procedural errors, constitutional or otherwise, that are correctable by the administrative tribunal from those that lie outside the BIA's ken." *Liu v. Waters*, 55 F.3d 421, 426 (9th Cir.1995). Thus, in *Liu*, the United

Countering Marogi's interests are the "twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy*, 503 U.S. at 145, 112 S.Ct. 1081. Concerns over protecting agency authority "apply with particular force when the action under review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise." *Id.* Because this case involves only a challenge to the constitutionality of § 236(c), which the agency is not empowered to address, the concern for preserving agency authority is not implicated.

As to the second of the twin purposes, exhaustion promotes judicial efficiency in two ways: first, exhaustion "may produce a useful record for subsequent judicial consideration." *Id.* at 145, 112 S.Ct. 1081. Second, "[w]hen an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted." *Id.* Again, because Marogi's claim is purely constitutional in nature, and because Marogi has conceded the prima facie elements of removability, the administrative record is not helpful to resolution of his claims. Similarly, although the Bureau still may have the opportunity to "correct" its denial of Marogi's CAT claim, it cannot correct its refusal to grant bond, because it does not have jurisdiction over that issue.

The court thus will not require exhaustion of administrative remedies, but instead will reach the substance of Marogi's petition.

### C. Constitutionality of § 236(c)

Moragi raises three constitutional claims. First, he contends that the mandatory detention provision violates the Eighth Amendment's prohibition against excessive bail. Second, he alleges that the provision violates the Fifth Amendment's substantive and procedural due process requirements. Finally, Petitioner asserts that transferring him to another prison out of this district would violate the INA and the Fifth and Eighth Amendments.

#### 1. Eighth Amendment[5]

■ Petitioner asserts that, because § 1226(c) mandates detention without providing the opportunity for bail, it violates the Eighth Amendment. The Eight Amendment, however, states only that "[e]xcessive bail shall not be required." U.S. Const. Amend. 8. As noted by the Supreme Court in *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), the clause "says nothing about whether bail shall be available at all." *Id.* at 752, 107 S.Ct. 2095; *see also Carlson v. Landon*, 342 U.S. 524, 545, 72 S.Ct. 525, 96 L.Ed. 547 (1952) ("[T]hat clause has never been thought to accord a right to bail in all cases, but merely to provide that bail shall not be excessive in those cases where it is proper to grant

States Court of Appeals for the Ninth Circuit concluded that the petitioner was required to exhaust his administrative remedies for his ineffective assistance of counsel claim. The court held that although "the BIA lacked jurisdiction to decide questions of constitutionality of the immigration laws," it did "have the authority to reopen cases to fix administratively correctable procedural errors, even when these errors are failures to follow due process." *Id.* at 426. Similarly, in *Yeung v. Immigration and Naturalization Service*, 76 F.3d 337 (11th Cir.1995), the Eleventh Circuit remanded an equal protection claim to the BIA because it had applied the same statute differently to similarly situated individuals. *Id.* at 340.

In this case, there is no claim that an administrative tribunal committed procedural error in violation of Marogi's constitutional rights. Rather, Marogi's challenge directly implicates the constitutionality of the governing statute. This is precisely the type of claim for which administrative exhaustion would be futile. *See Liu*, 55 F.3d at 426 ("On the one hand, we will not hear claims that have not been presented to the BIA simply because they have been labeled constitutional questions; on the other, we will not require a petitioner to engage in the futile exercise of making a motion to reopen when the BIA lacks the jurisdiction to entertain the claim.")

**5.** The parties did not address this issue in their supporting memoranda.

bail"). In this regard, the Supreme Court has concluded that "when Congress has mandated detention on the basis of a compelling interest other than prevention of flight, ... the Eighth Amendment does not require release on bail." *Id.* at 754–55, 72 S.Ct. 525. The "compelling interest" to which the Court in *Salerno* was referring was the safety of others. *Id.* at 753, 107 S.Ct. 2095 (citing *Carlson* 342 U.S. at 529, 72 S.Ct. 525 (upholding denial of bail where reasonable cause existed that release of individuals would endanger the welfare and safety of the public)). Concern for the public safety likewise "is at issue in Congress's decision to detain certain criminal aliens during removal proceedings." *Avramenkov v. INS,* 99 F.Supp.2d 210, 218 (D.Conn.2000); *see also Reyes v. Underdown,* 73 F.Supp.2d 653, 658 (W.D.La.1999) ("By mandating the detention of certain criminal aliens, Congress presumes that such aliens pose a danger to the community .... This presumption is not excessive given the serious nature of the crimes involved."); *Diaz–Zaldierna v. Fasano,* 43 F.Supp.2d 1114, 1119 ("[I]t is not excessive for Congress to find that aliens convicted of controlled substances offenses can be presumed to be dangerous such that their release on bail ... is not warranted.") Hence, the court finds that Congress's decision to deny criminal aliens the opportunity for bond pending the outcome of their removal proceedings does not violate the Eighth Amendment. *Accord Avramenkov,* 99 F.Supp.2d at 218; *Reyes* 73 F.Supp.2d at 659.

## 2. Fifth Amendment

The Fifth Amendment provides in pertinent part that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. Due process protection has two components: a substantive due process component and a procedural due process component. *See United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).

### a. substantive due process

"Substantive due process" prevents the government "from engaging in conduct that 'shocks the conscience' or interferes with rights 'implicit in the concept of ordered liberty.' " *Id.* (internal citations omitted). " 'Substantive due process' analysis must begin with a careful description of the asserted right, for the doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field." *Reno v. Flores,* 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) (internal citations omitted). Two Supreme Court decisions are instructive in this regard.

First, in *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), the Court deliberated the constitutionality of the Bail Reform Act, which "allows a federal court to detain an arrestee pending trial if the Government demonstrates by clear and convincing evidence after an adversary hearing that no release conditions 'will reasonably assure ... the safety for any other person and the community.' " *Id.* at 739, 107 S.Ct. 2095. The petitioners in *Salerno* argued the Due Process Clause prohibited "pretrial detention on the ground of danger to the community as a regulatory measure, without regard to the duration of the detention." *Id.* at 748, 107 S.Ct. 2095. In response, the Court recognized both the government's "legitimate and compelling" interest in preventing crime by arrestees and the "importance and fundamental nature" of an individual's strong interest in liberty, and noted that "the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest." *Id.* at 748, 107 S.Ct. 2095. The Court then noted the extensive procedural safeguards afforded under the Act—including a full adversarial hearing and a finding "by clear and convincing evidence of that an arrestee presents an identified and articulable threat to an individual or the community"—and

then concluded that, "[u]nder these circumstances," the "principle of justice" offended by pretrial detention was not "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* at 751, 107 S.Ct. 2095 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105, 54 S.Ct. 330, 78 L.Ed. 674 (1934)).

Second, in *Reno v. Flores*, 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993), the Court considered the constitutionality of federal laws which permitted the INS to detain juvenile aliens when placement with a statutorily approved adult was not possible. The petitioners in *Flores* alleged that they had a right to be released into the custody of any "responsible adult" and that detention based upon grounds that release into the custody of a statutorily approved adult was not possible violated their fundamental right to freedom from physical restraint. The Court rejected the petitioner's argument noting that "[t]he 'freedom from restraint' invoked by [petitioner's] is not at issue in this case. Surely not in the sense of shackles, chains, or barred cells .... [n]or even in the sense of a right to come and go at will, since, as we have said elsewhere, 'juveniles, unlike adults, are always in some form of custody.'" *Id.* at 302, 113 S.Ct. 1439 (citing *Schall v. Martin*, 467 U.S. 253, 265, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984)). Rather, the court found that the right at issue was "the alleged right of a child who has no available parent, close relative, or legal guardian, and for whom the government is responsible, to be placed in the custody of a willing-and-able private custodian rather than of a government-operated or government-selected child-care institution." *Id.* Based upon this narrow characterization of the right at issue, the Court concluded that the petitioners' liberty interest was not fundamental, and that the INS regulation thus had to satisfy only the "(unexacting)

standard of rationally advancing some legitimate governmental purpose—which it does." *Id.* at 306, 113 S.Ct. 1439.

As were the rights considered in *Salerno* and *Flores,* the right at issue in this case should be viewed narrowly. Marogi has conceded the elements of removability under § 1226(c): he acknowledges that he was convicted, and he acknowledges that, under the statute, his convictions render him removable. In similar circumstances, the Court of Appeals for the Seventh Circuit—the only court of appeals to have addressed this issue—concluded that the liberty interest at stake was not "liberty in the abstract, but liberty in the United States by someone no longer entitled to remain in this country." *Parra,* 172 F.3d at 958. When viewed in this manner, the court concluded that "[s]ection 226(c) plainly is within the power of Congress." *Id.*

That the appeal of Marogi's Convention Against Torture claim is still pending does not increase the magnitude of his liberty interest. Withholding of removal may be attained under two distinct statutory provisions. First, the Convention Against Torture was implemented by regulations located at 8 C.F.R. § 208.16–208.18, which provides, in pertinent part, as follows:

> If the immigration judge determines that the alien is more likely than not to be tortured in the country of removal, the alien is entitled to protection under the Convention Against Torture. Protection under the Convention Against Torture will be granted either in the form of withholding of removal or in the form of deferral of removal.

8 C.F.R. § 208.16(c)(4). Protection in the form of withholding removal is mandatory unless the petitioner has participated in certain prohibited acts.[6] In that case, pro-

**6.** Under the Convention Against Torture, if the person detained has participated in Nazi persecution; engaged in genocide; participated in the persecution of an individual on the basis of race, religion, nationality, member-

ship in a particular social group, or political opinion; been convicted of a "particularly serious crime"; committed a serious nonpolitical crime outside the United States before arrival; or is a danger to the security of the

tection in the form of deferral must be granted. *Id.* The regulations do not explain precisely what "withholding" entails, but do provide that deferral "[d]oes not confer upon the alien any lawful or permanent immigration status in the United States" and "[w]ill not necessarily result in the alien being released from custody of the Service if the alien is subject to such custody." 8 C.F.R. § 208.17(b)(1)(i)-(ii). The regulations further provide that deferral is effective only until terminated by the petitioner or an immigration judge, and that deferral does not preclude the alien from being removed "to another county where he or she is not likely to be tortured." § 208.17(b)(1)(iii)-(iv).

A parallel provision is found in 8 U.S.C. § 1231, which provides that "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The Supreme Court has held that under this provision "withholding only bars deporting an alien to a particular country or countries." *INS v. Aguirre–Aguirre,* 526 U.S. 415, 419, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999).

Thus, while the Convention Against Torture's explanation that deferral provides no permanent status, does not guarantee release from custody, and does not preclude removal to another country implies that withholding provides greater protection, *Aguirre–Aguirre* suggests that, at least under 1231(b)(3)(A), withholding similarly does not preclude removal to another country, and by implication does not otherwise improve a removable alien's status.

No other Article III or administrative cases were found explaining the distinction between withholding and deferral under the Convention Against Torture or between withholding under 8 C.F.R. § 208.16 and 8 U.S.C. § 1231. It appears, however, that withholding under CAT is identical to that available under § 1231, and that neither improves the status of an otherwise removable person by granting the right to remain at large within the United States. Instead, it appears that the only available relief in all cases is simply withholding removal to the country where torture or the loss of life or liberty is likely to occur.

For these reasons, Marogi's pending appeal does not magnify his liberty interest by potentially granting him an undiminished right to remain in the United States.

Marogi also attempts to distinguish his case from *Parra* on grounds that, in the absence of diplomatic relations between the United States and Iraq, his detention could extend indefinitely. Detention under § 1226(c) arguably would raise more serious constitutional concerns if it extended indefinitely. *See Salerno,* 481 U.S. at 748, 107 S.Ct. 2095 (implying that regulatory detention in a particular case might become excessively prolonged, and thus punitive, in violation of the Due Process Clause). That issue, however, is not properly before the court in this case. First, § 1226(c) only governs detention prior to entry of a final order of removal. Once the final order is entered, § 1231 governs. Under that section, mandatory detention continues for only 90 days while the INS carries out the removal. If the criminal detainee is not removed within the 90 day period, he can be released at the Attorney General's discretion, although he still would be subject to terms of supervision. *See* 8 U.S.C. § 1231(a)(3), (6).

Second, Marogi has failed to allege that he could not be removed, as permitted under the statute, to countries other than Iraq. Thus until it is established that he cannot be removed and that the Attorney General would forbid his release, the claim

United States, he is not eligible for withholding but, if otherwise qualified, will be granted a deferral. 8 C.F.R. 208.16(d)(2); 8 U.S.C.

§ 1231(B). Under § 1231(A), a person guilty of such acts simply becomes ineligible for protection. 8 U.S.C. § 1231(B).

that his detention will extend indefinitely is not ripe for adjudication.

Because Marogi does not have the right to remain in the United States, depriving him of the right to remain at large pending the outcome of his removal proceedings cannot convincingly be said to "shock the conscience" or "interfere with a right implicit in the concept of ordered liberty." *Salerno,* 481 U.S. at 746, 107 S.Ct. 2095. *Accord, Parra,* 172 F.3d at 958; *Reyes v. Underdown,* 73 F.Supp.2d 653, at 657 (W.D.La.1999) (finding in similar circumstances that a "fundamental liberty interest is not involved"); *Avramenkov,* 99 F.Supp.2d at 217 ("[I]t does not shock the conscience that a certain class of aliens subject to almost certain removal are detained pending removal."); *Diaz–Zaldierna v. Fasano,* 43 F.Supp.2d 1114, 1119 (S.D.Cal.1999) (stating that "the power to deport necessarily includes (at least to a point) the power to detain").

The conclusion that § 1226(c) does not violate Marogi's substantive due process rights is reinforced by the well-established principle that the scope of judicial inquiry into immigration legislation is limited. As noted by the court in *Martinez v. Greene,* 28 F.Supp.2d 1275 (D.Colo.1998),

> The Supreme Court has emphasized that "over no conceivable subject is the legislative power of Congress more complete than it is over" the admission and expulsion of aliens. *Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977) (quoting *Oceanic Steam Navigation Co. v. Stranahan,* 214 U.S. 320, 339, 29 S.Ct. 671, 53 L.Ed. 1013 (1909)). The Court "has long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Shaughnessy v. U.S. ex rel. Mezei,* 345 U.S. 206, 210, 73 S.Ct. 625, 97 L.Ed. 956 (1953). A myriad of decisions have not departed from the long-established rule that "the power over aliens is of a political character and

therefore subject only to narrow judicial review." *Hampton v. Mow Sun Wong,* 426 U.S. 88, 101 n. 21, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976) (citing *Fong Yue Ting v. United States,* 149 U.S. 698, 713, 13 S.Ct. 1016, 37 L.Ed. 905 (1893)); *accord, Mathews v. Diaz,* 426 U.S. 67, 81–82, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976). The *Mathews* Court observed that in the exercise of its broad power over immigration and naturalization, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Id.* at 80, 96 S.Ct. 1883.

*Id.* at 1280–81. Furthermore, the government's interest in enacting § 1226(c) was nothing short of compelling, since prior to its passage, approximately 90% of criminal aliens in Marogi's situation absconded when released on bail. *See Parra,* 172 F.3d at 956 (citing 62 Fed.Reg. 10,312, 10323 (1997)).

■ Thus, considering the diminished nature of Marogi's liberty interest and the compelling governmental interest in preventing both a continuation of crime and flight of arrestees, the court concludes that § 1226(c) does not violate Marogi's substantive due process rights.

#### b. procedural due process

■ "Procedural due process" requires that, "when government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner." *United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (citing *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). In determining whether implementation of a government action is fair, the court is required to evaluate (1) the private interest that will be affected by the official action, (2) the probability of error and the effect of additional safeguards on that rate of error, and (3) the government interest involved, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural

requirement would entail." *Mathews*, 424 U.S. at 335, 96 S.Ct. 893.

 As discussed above, the private interest here is very attenuated: the liberty of one who is no longer entitled to remain in the United States, but eligible to live at liberty elsewhere; the probability of error is zero because Marogi has conceded all elements that require removal; and the government's interest is substantial, given the high flight rate of those previously released on bail. *Accord Parra*, 172 F.3d at 958. As noted by the Seventh Circuit, "The Supreme Court held in *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), that pretrial detention in criminal prosecutions (a parallel to pre-removal detention) comports with the Constitution even though the private interest is greater, the likelihood of error must be deemed significant given the prosecutor's high burden at a criminal trial, and the public interest is less (for the skip rate on bond in criminal prosecutions is well under 90%). Given the sweeping powers Congress possesses to prescribe the treatment of aliens, the constitutionality of § 1225(c) is ordained." *Id.* (internal citations omitted).

### D. Constitutionality of Transfer

In his petition, Marogi fails to set forth any legal authority supporting the alleged right to be detained in one prison as opposed to another. Furthermore, the INS assures in its response memorandum that it has no intention of removing Marogi from his current location. Finally, even if Marogi were being removed, Congress has placed the responsibility for determining where aliens are to be detained within the sound discretion of the Attorney General. *See* 8 U.S.C. § 1231(g)(1) ("The Attorney General shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal.").

Ordinary review of such decisions is plainly precluded by 8 U.S.C. § 1252(a)(2)(B)(ii). *Accord Avramenkov v.*

*INS*, 99 F.Supp.2d at 213. Marogi has not briefed this issue, let alone explained how a transfer would violate any constitutional right. Accordingly, habeas review is deemed by the court to be unavailable.

## III. CONCLUSION

For all the foregoing reasons, the court DENIES and DISMISSES Dorid Marogi's petition for habeas corpus.