Benyam **HABTEGABER**, Petitioner,

v.

Carol **JENIFER**, District Director of the Immigration and Naturalization Service, Respondent.

No. CIV. 02–40072.

United States District Court,
E.D. Michigan,
Southern Division.

July 26, 2002.

Tamara A. French, Detroit, MI, for Benyam Habtegaber, petitioner.

Nancy A. Abraham, U.S. Attorney's Office, Flint, MI, for Carol Jenifer, District Director, Immigration and Naturalization Service, respondent.

### MEMORANDUM OPINION AND ORDER

GADOLA, District Judge.

Before the Court is Petitioner Benyam Habtegaber's petition for a writ of habeas corpus and complaint for declaratory and injunctive relief [docket entry 1]. Pursuant to Local Rule 7.1(e)(2), the Court has determined that a hearing would not aid significantly in the disposition of the peti-

tion. For the reasons set forth below, the Court shall conditionally grant the petition.

## I. BACKGROUND

Petitioner, a citizen of Ethiopia, entered the United States on November 30, 1990 as a refugee. On August 26, 1992, Petitioner's status was adjusted to that of a lawful permanent resident. On April 22, 1997, following a conviction for "unlawful issuance of bank checks or drafts," Petitioner was sentenced to 365 days in jail with 359 days suspended in the King County District Court, Seattle, Washington. On December 10, 1998, Petitioner was sentenced to 30 days in jail and 24 months probation in 56th Circuit Court, Charlotte, Michigan, following a conviction for "no account check." On December 21, 1998, Petitioner was sentenced in the 54–B District Court, East Lansing, Michigan to 29 days in jail and 24 months probation following convictions on two counts of "check non-sufficient funds over $50 but less than $200."

Petitioner filed for naturalization on November 21, 1997, but withdrew his naturalization application on August 11, 2000. On January 28, 2002, the INS took Petitioner into custody, and charged him with being removable from the United States because of his prior convictions pursuant to two separate provisions of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii) (alien convicted of an aggravated felony), and 8 U.S.C. § 1227(a)(2)(A)(ii) (alien convicted of two or more crimes involving moral turpitude).

Petitioner requested a custody determination, and on February 19, 2002, an immigration judge found, pursuant to 8 U.S.C. § 1226(c), that detention was mandatory until the conclusion of Petitioner's removal proceedings. Petitioner did not appeal the immigration judge's decision to the Board of Immigration Appeals ("BIA"). Petitioner filed a petition for a writ of habeas corpus in this Court under 28 U.S.C. § 2241 challenging the constitutionality of § 1226(c). Petitioner seeks a declaration that § 1226(c) is unconstitutional because it violates his due process rights under the Fifth Amendment, and a writ of habeas corpus granting him either immediate release from detention, or an immediate, individualized bond hearing before an impartial adjudicator.

## II. DISCUSSION

### A. JURISDICTION

■ Although Respondent does not challenge the Court's jurisdiction in this matter, the Court must conduct its own, independent review to determine if it has jurisdiction. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 278, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). A writ of habeas corpus may be issued when a prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). An alien in federal custody pending removal may challenge the constitutionality of his confinement pursuant to 28 U.S.C. § 2241. *Marogi v. Jenifer,* 126 F.Supp.2d 1056, 1058–59 (E.D.Mich.2000). Nevertheless, the Court examines two provisions of the INA that limit judicial review of certain actions taken by the Attorney General during the removal process. *See id.*

■ The first provision, 8 U.S.C. § 1252(g), deprives courts of jurisdiction to hear "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." 8 U.S.C. § 1252(g). The Supreme Court has construed this preclusion clause to encompass only the three specific situations set forth in the statute. *Reno v. American–Arab Anti–Discrimination Comm.,* 525 U.S. 471, 482–87, 119 S.Ct. 936, 142

L.Ed.2d 940 (1999). As Petitioner is not challenging any of the enumerated decisions or actions, § 1252(g) does not foreclose habeas review of his claims. *See Shurney v. INS*, 201 F.Supp.2d 783, 788 (N.D.Ohio 2001).

The second provision, 8 U.S.C. § 1226(e), provides that:

The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e). This provision, however, applies to "challenges to operational decisions, rather than to the legislation establishing the framework for those decisions." *Marogi*, 126 F.Supp.2d at 1059 (quotation omitted). As Petitioner is not seeking review of a decision made by the Attorney General, but is instead directly challenging the constitutionality of the statute, § 1226(e) does not foreclose habeas review. *See Shurney*, 201 F.Supp.2d at 788. Accordingly, the Court finds that these provisions of the INA do not deprive the Court of jurisdiction to review Petitioner's § 2241 habeas petition.

**B. EXHAUSTION OF ADMINISTRATIVE REMEDIES**

■ Petitioner admits that he has not exhausted all of his available administrative remedies, but contends that exhaustion is not required in this case because it would be futile. Although Respondent has not raised the issue, the Court addresses this issue because, under the doctrine of exhaustion of administrative remedies, "a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself." *Howell v. INS*, 72 F.3d 288, 291 (2d Cir.1995) (quotation omitted).

■ "Where Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). Where, as in the case of § 1226(c), Congress has not clearly mandated exhaustion, whether to require exhaustion is within the sound discretion of the court. *Id.* at 144, 112 S.Ct. 1081. In such circumstances, the Court "must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *Id.* at 146, 112 S.Ct. 1081.

■ Under Supreme Court precedent, there are "at least three broad sets of circumstances in which the interests of the individual weigh heavily against requiring administrative exhaustion." *Id.* Those circumstances include: "(1) where such a requirement would subject an individual to an unreasonable or indefinite time frame for administrative action; (2) where the administrative agency lacks the competence to resolve the particular issue presented, or (3) the exhaustion of administrative remedies would be futile because the administrative body is shown to be biased or has pre-determined the issue before it". *Shurney*, 201 F.Supp.2d at 789; *see McCarthy*, 503 U.S. at 146–48, 112 S.Ct. 1081.

■ The present case is a constitutional challenge to § 1226(c), which administrative fora are not empowered to address dispositively. *See McCarthy*, 503 U.S. at 147–48, 112 S.Ct. 1081; *Marogi*, 126 F.Supp.2d at 1060–61. "Indeed, the [BIA] has expressly found that it lacks authority to determine the constitutionality of the mandatory detention provisions of 8 U.S.C. § 1226(c)." *Shurney*, 201 F.Supp.2d at 789 (citing *In re Joseph*, Int.Dec. 3387 at 6 (BIA 1999)). Because the BIA lacks the ability to resolve the issue, it would be futile for Petitioner to pursue administra-

tive remedies. *See id.; Marogi,* 126 F.Supp.2d at 1060. Thus, the Court shall address the merits of the petition without requiring administrative exhaustion.

## B. ANALYSIS

### 1. THE STATUTE

Congress passed 8 U.S.C. § 1226(c) as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009. Entitled "Detention of criminal aliens," § 1226(c) provides, in relevant part:

> (c) Detention of criminal aliens
>
>   (1) Custody
>
>   The Attorney General shall take into custody any alien who ...
>
>   (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

8 U.S.C. § 1226(c)(1)(B).

Thus, if the immigration judge determines that § 1226(c) applies, detention is mandatory, as § 1226(c)(1) precludes bail during the pendency of removal proceedings for those individuals designated as "criminal aliens." *See Kim v. Ziglar,* 276 F.3d 523, 527 (9th Cir.2002).

### 2. PETITIONER'S DUE PROCESS CHALLENGE

■ Petitioner claims that before he may be detained indefinitely in removal proceedings, he his entitled, at least, to an individualized determination that he is a flight risk or a danger to the community. Petitioner contends, therefore, that § 1226(c)'s mandatory detention provision violates his substantive and procedural due process rights under the Fifth Amendment, and he brings both facial and as-applied challenges to § 1226(c).

■ Outside of the First Amendment context, a Court may uphold a facial challenge to a statute only if the challenging party can demonstrate that there is no constitutional application of the statute. *Coleman v. DeWitt,* 282 F.3d 908, 914 (6th Cir.2002); *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Petitioner has failed to carry this heavy burden. In *Kim v. Ziglar,* the Ninth Circuit declined to address whether § 1226(c) is unconstitutional on its face, noting that the statute also applies to "excludable" aliens "paroled" into the United States. *See* 276 F.3d at 527. The court in *Kim* observed that under the entry doctrine, excludable aliens are deemed not to be present on United States territory, and " 'a holding that they have no substantive right to be free from immigration detention reasonably follows.' " *Id.* (quoting *Barrera–Echavarria v. Rison,* 44 F.3d 1441, 1450 (9th Cir.1995) (en banc)). Here, as in *Kim,* the detention of aliens who have not "entered" the United States is not before the Court. Accordingly, on the record of this case, the Court is not prepared to address whether detention under § 1226(c) would be unconstitutional in all of its possible applications, and the Court will therefore not address Petitioner's facial challenge to the statute. *See id.* at 528.

The Court will, however, address Petitioner's claim that § 1226(c) is unconstitutional as applied to him as a lawful permanent resident alien. *See id.* Therefore, in order to prevail, Petitioner need only show that the statute, as applied to his particular situation, violates due process. *See Hoang v. Comfort,* 282 F.3d 1247, 1255 (10th Cir.2002).

> The Due Process Clause of the Fifth Amendment provides that "No person shall ... be deprived of life, liberty, or property, without due process of law...." [The Supreme Court] has held that the Due Process Clause protects individuals against two types of govern-

ment action. So-called "substantive due process" prevents the government from engaging in conduct that "shocks the conscience," or interferes with rights "implicit in the concept of ordered liberty." When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. This requirement has traditionally been referred to as "procedural" due process.

*Salerno,* 481 U.S. at 746, 107 S.Ct. 2095 (citations omitted).

■ " 'Substantive due process' analysis must begin with a careful description of the asserted right." *Reno v. Flores,* 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). If the liberty interest asserted may be characterized as "fundamental," then the government may not infringe upon that interest "*at all,* no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Id.* (emphasis in original). Petitioner asserts that he has a fundamental liberty interest in being free from physical restraint during the pendency of his removal proceedings, and that this interest may not be arbitrarily infringed by the Government absent an individualized hearing to determine whether he is a flight risk or a danger to the community. Accordingly, Petitioner urges the Court to apply a heightened level of scrutiny to § 1226(c).

■ Respondent sets forth various arguments in support of a more deferential standard of review. Respondent argues that the Court should apply a deferential standard of review because Congress' "plenary power" in the area of immigration law requires the judicial branch to defer to executive and legislative branch decisions. *See Harisiades v. Shaughnessy,* 342 U.S. 580, 588–89, 72 S.Ct. 512, 96 L.Ed. 586 (1952). Nevertheless, "that power is sub-ject to important constitutional limitations." *Zadvydas v. Davis,* 533 U.S. 678, 695, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001); *see also INS v. Chadha,* 462 U.S. 919, 940–41, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983) ("The plenary authority of Congress over aliens under Art. I, § 8, cl. 4 is not open to question, but what is challenged here is whether Congress has chosen a constitutionally permissible means of implementing that power."). Here, Petitioner's challenge concerns whether, through the enactment of § 1226(c), Congress has chosen a constitutionally impermissible means of implementing its power. Accordingly, the Court need not apply the deferential standard of review required in those situations where Congress exercises its plenary power. *See Zadvydas,* 533 U.S. at 695, 121 S.Ct. 2491.

Respondent further maintains that heightened scrutiny is not applicable in this case because whatever liberty interest a detained alien possesses, it is greatly diminished by his lack of a legal right to live at large in this country. Relying upon *Parra v. Perryman,* 172 F.3d 954 (7th Cir.1999), Respondent argues that Petitioner's interest "is not liberty in the abstract, but liberty *in the United States* by someone no longer entitled to remain in this country." *Id.* at 958 (emphasis in original). The Supreme Court, however, rejected a similar argument in *Zadvydas,* holding that even an alien already subject to removal retained a liberty interest "strong enough to raise a serious question as to whether, irrespective of the procedures used, the Constitution permits detention that is indefinite and potentially permanent." *Zadvydas,* 533 U.S. at 696, 121 S.Ct. 2491. "The choice … is not between imprisonment and the alien 'living at large.' … It is between imprisonment and supervision under release conditions that may not be violated." *Id.* Thus, the Court finds that, "[i]n the wake of the

Supreme Court's ruling in *Zadvydas,* the vitality of the Seventh Circuit's holding in *Parra* is greatly diminished, as is the Government's argument which relies upon *Parra.*" *Hoang,* 282 F.3d at 1256.[1] The Court further notes that the broad proposition set forth in *Parra* subsequently has been characterized as an inaccurate statement of the law. *See Kim* 276 F.3d at 537 ("A lawful permanent resident such as [Petitioner] has a legal right to remain in the United States until a final removal order is entered against him.").

The Court also finds unpersuasive Respondent's argument that the Supreme Court's ruling in *Flores* requires this Court to apply a deferential standard of review to § 1226(c). In *Flores,* the Supreme Court addressed the constitutionality of a regulation which permitted the release of detained juvenile aliens, arrested on suspicion of being deportable, only to their parents, legal guardians, adult relatives, or other appointed and approved care givers. *See* 507 U.S. at 297, 113 S.Ct. 1439. The Supreme Court found that rational basis review was appropriate, and that under that standard, the regulation did not violate due process. *Id.* at 305, 113 S.Ct. 1439. The Court noted that "juveniles, unlike adults, are always in some form of custody," and that the interest in "freedom from physical restraint" was not at issue "in the sense of shackles, chains, or barred cells." *Id.* at 302, 113 S.Ct. 1439 (quotations omitted). *Flores,* however, is distinguishable from the present case on these grounds. As an adult, Petitioner ordinarily has the right to come and go at will. *See Hoang,* 282 F.3d at 1257. Further, unlike the juveniles in *Flores,* Petitioner is indeed facing physical restraint in

the form of "shackles, chains, and barred cells." *See id.*

In *Zadvydas* the Supreme Court noted that "the Due Process Clause applies to all 'persons' within the United States, including aliens." 533 U.S. at 693, 121 S.Ct. 2491; *see also Hoang,* 282 F.3d at 1256 (noting that "[a]liens who are lawful permanent residents of and are physically present in the United States are persons within the protection of the Fifth Amendment"). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause." *Foucha v. Louisiana,* 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Salerno,* 481 U.S. at 755, 107 S.Ct. 2095. "Even in the context of aliens, government detention violates the Due Process Clause unless the detention is ordered in a criminal proceeding with adequate procedural protections, or in 'certain special and narrow nonpunitive circumstances ... where a special justification ... outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Hoang,* 282 F.3d at 1257 (quoting *Zadvydas,* 533 U.S. at 690, 121 S.Ct. 2491) (alterations in original). The Tenth Circuit in *Hoang* concluded that "[t]he liberty interest of a person who is detained pending deportation proceedings is no less fundamental" than that enjoyed by a person detained pending trial. *Id.* (citing *Salerno,* 481 U.S. at 750–51, 107 S.Ct. 2095). This Court finds the Tenth Circuit's analogy persuasive, and concludes that Petitioner has a fundamental liberty interest in freedom from detention during the pendency of his de-

---

1. Since *Zadvydas,* three Circuit Courts of Appeals have rejected the reasoning in *Parra* and found § 1226(c) unconstitutional relying on the Supreme Court's reasoning in *Zadvydas.*

*Kim v. Ziglar,* 276 F.3d 523, 537 (9th Cir. 2002); *Hoang v. Comfort,* 282 F.3d 1247, 1256 (10th Cir.2002); *Patel v. Zemski,* 275 F.3d 299, 313 (3d Cir.2001).

portation proceedings that may only be infringed upon in certain limited circumstances. *See id.*

█ Because the Court finds that § 1226(c) infringes upon a fundamental liberty interest, the Court shall apply heightened scrutiny to its review of § 1226(c). Thus, the infringement upon Petitioner's interest must be narrowly tailored to serve a compelling state interest. *See Flores* 507 U.S. at 302, 113 S.Ct. 1439. The Court shall apply to this determination the two-part due process inquiry set forth in *Salerno. See Patel v. Zemski,* 275 F.3d 299, 310 (3d Cir.2001). Under *Salerno,* the Court must consider whether a restriction on liberty constitutes (1) impermissible punishment or permissible regulation; and (2) if it is regulatory, whether it is excessive in relation to its legislative purpose. *See Patel,* 275 F.3d at 310; *Salerno,* 481 U.S. at 746–47, 107 S.Ct. 2095.

Under the first prong of *Salerno,* the Court concludes that § 1226(c) is a permissible regulatory measure. *See Patel,* 275 F.3d at 310 (noting that "[t]he power to deport necessarily encompasses the power to detain"). Detention under § 1226(c) is civil, not criminal, and is nonpunitive in purpose and effect. *See Hoang,* 282 F.3d at 1257 (noting that Congress designed the mandatory detention provision to serve the nonpunitive purposes of preventing flight and protecting the community) (citing S.Rep. No. 104–48 at 23–27, 31–32 (1995); 63 Fed.Reg. 27441, 27442 (May 19, 1998)); *Zadvydas,* 533 U.S. at 690, 121 S.Ct. 2491.

Having determined that § 1226(c) is regulatory, the Court next examines, under the second prong of *Salerno,* Congress' purpose for enacting the statute. Respondent maintains that the purpose of mandatory detention under § 1226(c) is to: (1) "prevent[ ] flight by criminal aliens so that they can be expeditiously removed as required by law"; (2) "protect[ ] public safety from the presence of potentially

dangerous criminal aliens"; (3) "correct[ ] the failure of the prior bond procedures"; (4) "and repair[ ] damage to America's immigration system." (Resp.Br. at 11.) The Ninth Circuit has characterized Respondent's third and fourth arguments as "so general that they amount to little more than saying that the 'justification' of the statute is to make deportation a priority and to make things better." *Kim,* 276 F.3d at 531. This Court agrees with that assessment, and accordingly shall address only the first two rationales, (1) preventing flight and (2) protecting public safety from dangerous criminal aliens. Therefore, under *Salerno,* the Court examines whether preventing flight and protecting the public constitute special justifications which outweigh Petitioner's constitutionally protected interest in avoiding physical restraint. *See Zadvydas,* 533 U.S. at 690, 121 S.Ct. 2491.

It is undisputed that the government has a compelling interest in ensuring attendance by deportable aliens at deportation proceedings. *See Hoang,* 282 F.3d at 1259. Section 1226(c), however, is not narrowly tailored to achieve that interest. Rather than establishing a procedure to determine which aliens might be flight risks, § 1226(c) establishes an irrebuttable presumption that all aliens to which mandatory detention applies are flight risks. *See id.*

Respondent maintains that statutes creating permanent irrebuttable presumptions are not *per se* violative of due process, citing *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), *Regents of Univ. of California v. Shalala,* 82 F.3d 291 (9th Cir.1996), and *Burlington N.R.R. v. Dep't of Pub. Serv. Reg.,* 763 F.2d 1106 (9th Cir.1985). Respondent's authority, however, is inapplicable to the present case. *Salfi* and *Shalala* are limited to irrebuttable presumptions in the con-

text of social programs. *See Shalala,* 82 F.3d at 296 (discussing *Salfi;* noting that "the constitutionality of irrebuttable presumptions *in social programs* has been well settled") (emphasis added). Similarly, while the Ninth Circuit noted in *Burlington N.R.R.* that "[a]n irrebuttable presumption is not per se unconstitutional and does not demand an individualized hearing so long as it is rational," the Court expressly limited its holding. 763 F.2d at 1113. The court noted that "[a] state does not violate due process by making a legislative determination rather than a particularized inquiry *if the subject of the legislation does not interfere with the exercise of fundamental rights....* A statutorily defined irrebuttable presumption ... is not unconstitutional *in statutes which regulate economic matters." Id.* (internal citations omitted) (emphasis added).

Respondent's authority, therefore, does not support the constitutionality of the irrebuttable presumption present in § 1226(c). The Court has already determined that Petitioner's liberty interest is a fundamental right, and mandatory detention prior to a final order of removal is not related to either social insurance programs or economic matters, where such presumptions are constitutionally permissible. "[A] risk of flight cannot be imputed to all who fit the broad category of persons affected by [§ 1226(c) ]," and "[t]he risk of flight posed by some criminal aliens is insufficient to justify the mandatory detention of all aliens who meet the criteria under § 1226(c)." *Hoang,* 282 F.3d at 1259–60. The Government indeed has a compelling interest in ensuring the appearance of aliens at removal proceedings, yet "this interest is not sufficient to justify detention of a lawful permanent resident alien without an individualized determination that the alien is in fact a flight risk." *Id.* at 1260.

While the government has a compelling interest in protecting the public from dangerous aliens, § 1226(c) applies a blanket irrebuttable presumption that all "criminal aliens" are dangerous, a presumption not justified by the nature of offenses which § 1226(c) encompasses. Mandatory detention under § 1226(c) applies not only to dangerous offenders such as murderers, rapists, terrorists, violators of controlled substance and firearms laws, and repeat offenders, but also to those convicted of relatively less dangerous offenses, such as crimes of moral turpitude with a sentence of one year in prison, theft offenses with a term of imprisonment of one year or more, fraud, tax evasion, assisting document fraud in some cases, and perjury. *See* 8 U.S.C. §§ 1226(c), 1101(a)(43); *see Hoang,* 282 F.3d at 1260. Given the wide range of offenses covered by § 1226(c), the safety of the public does not justify its mandatory detention of lawful permanent resident aliens without individualized determinations that they in fact pose a danger to the public.

Respondent's reliance upon the Supreme Court's decision in *Carlson v. Landon,* 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952) is unavailing in support of the constitutionality of § 1226(c). In *Carlson,* the Supreme Court upheld a provision that allowed the Attorney General to detain without bail, pending deportation, aliens who were members of the Communist party. *See id.* at 527–28, 544, 72 S.Ct. 525. The Court found that the Attorney General had not abused his discretion by detaining aliens upon the basis of Communist party membership alone, and that further evidence of subversive activity need not be shown. *See id.* at 541, 72 S.Ct. 525. Respondent argues that, in contrast to *Carlson,* mandatory detention under § 1226(c) is premised upon "actual crimes or conduct of convicted criminals," which is "conclusive evidence that the alien poses an unac-

ceptable risk to the public interest." (Resp.Br. at 18.)

In contrast to § 1226(c), the provision at issue in *Carlson* provided the Attorney General with discretion to make an individualized determination of dangerousness when determining whether to detain a member of the Communist party prior to deportation. *See Carlson* 342 U.S. at 541–44, 72 S.Ct. 525. In fact, the Court noted that "[t]here [was] no evidence or contention that all persons arrested as deportable ... for Communist membership [were] denied bail." *Id.* at 541–42, 72 S.Ct. 525. In contrast, § 1226(c) does not provide for an individual determination of risk of flight or dangerousness, but instead imputes to all criminal aliens a risk of flight and a risk of dangerousness to the public. *See Hoang,* 282 F.3d at 1259.

Here, Petitioner is being detained because he has been labeled an "aggravated felon" and guilty of a "crime involving moral turpitude," for passing bad checks. Respondent has not claimed that Petitioner would be either a flight risk or a danger to the public, and without an individualized determination of dangerousness, Respondent cannot assume that lawful permanent residents who have been convicted of the crimes encompassed by § 1226(c) are dangerous.

Additionally, any argument that § 1226(c)'s blanket presumption of flight risk and dangerousness to the public is narrowly tailored is undermined by the bond determinations made in other cases. Many of these other petitioners, despite having been convicted of crimes arguably more dangerous to the public than those committed by Petitioner, were ordered released on various amounts of bond. *See, e.g., Hoang,* 282 F.3d at 1252–53 (petitioners convicted of "threat/use of a dangerous weapon," aggravated robbery, and forgery, respectively, all released on bond after individual hearings); *Kim,* 276 F.3d at 526

(petitioner convicted of first degree burglary and petty theft released on bond without individual hearing).

Respondent has not shown any special justification for Petitioner's mandatory detention under § 1226(c) that is sufficient to outweigh his constitutionally protected liberty interest, as a lawful permanent resident alien, in avoiding physical restraint without an individualized determination of flight risk or danger to the public. *See Hoang,* 282 F.3d at 1260. The Court therefore finds that 8 U.S.C. § 1226(c), which requires Petitioner's mandatory detention during deportation proceedings, violates Petitioner's right to substantive due process under the Fifth Amendment. It is consequently unnecessary to reach Petitioner's claim that § 1226(c) also deprives him of procedural due process.

## III. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the petition for a writ of habeas corpus [docket entry 1] is **CONDITIONALLY GRANTED.** The INS shall immediately release Petitioner from custody, or, within fourteen (14) days of the entry of this order, afford Petitioner a bond hearing before an immigration judge. The immigration judge shall state clearly, on the record, upon an individualized determination, whether any condition or combination of conditions of release will reasonably ensure that Petitioner will not flee and that he will not pose a danger to the community, pending a final order of removal.

**SO ORDERED.**